## A99A0153. JOHNSON v. THE STATE.
(520 SE2d 221)

ANDREWS, Judge.

Lucious L. Johnson, a/k/a Lucius Johnson, appeals from the denial of his motion for new trial following his conviction of three counts of aggravated assault[1] and one count each of rape and false imprisonment.

1. The first and second enumerations challenge the legal sufficiency of the evidence. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As acknowledged by Johnson, on appeal this Court views the evidence in the light most favorable to the jury's verdict and determines whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Wilson v. State*, 233 Ga. App. 327, 328 (1) (503 SE2d 924) (1998).

> "Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Patterson v. State*, 225 Ga. App. 515 (484 SE2d 317) (1997).

*Shabazz v. State*, 229 Ga. App. 465, 466 (1) (494 SE2d 257) (1997).

So viewed, the evidence was that N. B., a long-time acquaintance of Johnson and a crack cocaine user, was walking in an area known as "Crack City" when she met Johnson around midnight on June 26, 1996. She and Johnson had done odd jobs together in the past, and he asked her to come by the house where he stayed to show her a job he wanted help with the next morning. As they walked, Johnson gave N. B. a dollar and asked her to buy him a shot of liquor at a shot house, which she did. Johnson smelled of alcohol, and N. B. described him as "tipsy."

They arrived at Clarence's house, which Johnson shared. The portion of the house where Johnson lived had no electricity, and the only light came from a street light, making the interior dark. Johnson asked N. B. for sex, but she said no. He then offered her a rock of crack cocaine in exchange for sex, but she again refused. N. B. had smoked crack earlier in the day with another acquaintance. Her practice was to walk after taking a hit in order not to "get geek," and

---

[1] One count each for assault with intent to rape, assault with a stick in a manner likely to cause serious bodily injury, and assault with a screwdriver in a manner likely to cause serious bodily injury.

it was during this walk that she encountered Johnson.

After she refused his offer of crack for sex, Johnson jerked her up off the couch where she was sitting and tore off her shorts and panties. Johnson had gotten a stick from inside the residence, and he struck her from the back, causing a cut and severe swelling and bruising on the left side of her face. Over the next several hours, Johnson refused to let her leave and had sex with her repeatedly, twice while she was on her back and twice while she was on her stomach.

N. B. did not resist Johnson because, in addition to his hitting her with the stick, he threatened her with some kind of silver object that she thought might have been a screwdriver. N. B. knew that Johnson kept a screwdriver and other tools to work with in his pocket. Additionally, N. B. was aware that Johnson had previously stabbed someone in the neck with a screwdriver. During the encounter, Johnson repeatedly said that he ought "to go on and do what he got to do" to her. A screwdriver and other tools were found in Johnson's residence.

Around 6:00 a.m. the next morning, after Johnson had gone to sleep, N. B. slipped out of the house, taking the stick she had been assaulted with. She had an acquaintance take her to the police station and said she wanted to take out a warrant for Johnson's arrest. When asked if she had been sexually assaulted, N. B. initially answered negatively, but looked down at the floor while doing so. The officer asked again, and she acknowledged that she had been raped.

Although no physical evidence of rape was found as a result of her medical examination, the nurse did notice blood in the crotch of her panties, although she could not tell if it was recent or old. N. B. suffered a broken nose in addition to the damage to her face and eye. The nurse also stated, based on her medical experience, that it was not uncommon for there to be no physical evidence of forcible rape found in women who had been sexually active.

After Johnson was picked up, he initially denied knowing the victim at all, then acknowledged knowing her but denied having seen her in years or doing odd jobs with her. Then, he said he had done odd jobs with her, but had not seen her or spoken with her that day. Finally, Johnson said that he had been awakened from sleep when someone entered his residence and he had struck that person with the stick. Then he said he had seen N. B. in his residence stealing from him and he "did knock hell out of her." Told he might have to provide blood and hair samples, Johnson said he had had consensual sex with N. B. but it had been earlier in the day.

Determining which version of these events to believe was solely the province of the jury, and there was sufficient evidence to support their conclusions. *Jackson*, supra; *Ringo v. State*, 236 Ga. App. 38, 39

(510 SE2d 893) (1999).

2. Johnson's third, fourth, fifth, and sixth enumerations deal with the court's admission of N. B.'s statement that she was aware that Johnson had previously "stuck a dude in the neck with a screwdriver." All four enumerations are considered together because, in essence, they all deal with Johnson's claim that the statement improperly placed his character in issue and was not otherwise admissible.

N. B. had testified that she was unsure what the silver object that Johnson used to threaten her was. Asked why she was afraid of this unidentified object, she made the statement. Immediately thereafter, in response to Johnson's objection that it improperly placed his character in issue, the court instructed the jury that the statement was not to be considered for the truth of its content and that the jury was not concerned with whether such an event had in fact occurred. Rather, it was to be considered only as it related to the state of mind of N. B. as it related to her lack of resistance.

As reflected in Division 1, Johnson contended that sex with N. B. was consensual, and there was no medical evidence of trauma or force.

> Under OCGA § 16-6-1 (a), "(a) person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will." In *State v. Collins*, 270 Ga. 42 (508 SE2d 390) (1998) . . . , the Supreme Court of Georgia recently reiterated that the terms "forcibly" and "against her will" are two separate elements of proving rape. See also *Drake v. State*, 239 Ga. 232 (236 SE2d 748) (1977). "The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or *mental coercion, such as intimidation. . . .* (T)he state must prove the element of force as a factual matter in forcible rape cases. . . . Further, " '(f)orce may be proved by direct or circumstantial evidence.' [Cit.]" *Gibbins v. State*, 229 Ga. App. 896, 898 (1) (495 SE2d 46) (1997). *"Lack of resistance, induced by fear, is force*, and may be shown by the prosecutrix'[s] state of mind from her prior experience with appellant and subjective apprehension of danger from him." (Citations and punctuation omitted; emphasis supplied.) *Calloway v. State*, 199 Ga. App. 272, 273 (1) (404 SE2d 811) (1991).

*House v. State*, 236 Ga. App. 405, 408 (1) (512 SE2d 287) (1999). See also *Gibbins v. State*, supra at 897-898 (1).

That this evidence, which was relevant and material to one of

the required elements of rape, may have incidentally placed Johnson's character in issue did not make it inadmissible. *Mize v. State*, 269 Ga. 646, 650 (3) (501 SE2d 219) (1998); *Daniels v. State*, 252 Ga. 30, 32 (6) (310 SE2d 904) (1984); *Calloway v. State*, 199 Ga. App. 272 (1) (404 SE2d 811) (1991). Further, the trial court's immediate instruction to the jury of the limited purpose for which the evidence was being introduced was sufficient to correct any potential harm. *Reid v. State*, 171 Ga. App. 52, 53 (2) (318 SE2d 782) (1984).

3. The seventh enumeration claims error in the trial court's granting of the State's motion in limine, premised on the rape shield statute,[2] regarding Johnson's reference to N. B. as a "well known whore" in his statement to police. Johnson, relying on *West v. State*, 200 Ga. 566 (1) (37 SE2d 799) (1946), contends that, pursuant to OCGA § 24-3-38, if the State introduces part of an accused's statement, then the accused is entitled to admit the remainder. *West*, however, involved a murder prosecution in which the improperly redacted portion of the statement dealt with justification, a legal defense. Here, even assuming the contested statement to be true, that is no defense to rape. *Harris v. State*, 257 Ga. 666, 668 (1) (362 SE2d 211) (1987).

There was no error. *Snow v. State*, 228 Ga. App. 649, 651 (4) (492 SE2d 564) (1997); *Bates v. State*, 216 Ga. App. 597 (454 SE2d 811) (1995); see *Brown v. State*, 214 Ga. App. 676 (2) (448 SE2d 723) (1994).

4. Johnson's eighth enumeration of error was not the subject of an objection below and will not be considered here for the first time. *Thomas v. State*, 224 Ga. App. 816 (1) (482 SE2d 472) (1997).

5. Johnson contends that his statement to Officer Presley was improperly admitted because it was not shown by a preponderance of the evidence to have been freely and voluntarily given. The sole premise for this argument was the officer's statement during his direct examination in the *Jackson v. Denno*[3] hearing that he told Johnson "that this was a waiver of rights and *he had to sign it* saying that I had read him his rights and that he understood them." (Emphasis supplied.)

Thereafter, however, on cross-examination and during his testimony before the jury, Officer Presley stated that he did not pressure, coerce or threaten Johnson, that Johnson said he understood his *Miranda* rights and the form and was willing to talk to him without an attorney. The one portion of the testimony emphasized by Johnson

---

[2] OCGA § 24-2-3.

[3] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

does not require the conclusion that Johnson had no choice but to sign.

There was no error in concluding that the statement was voluntarily given. *Wingfield v. State*, 229 Ga. App. 75, 81 (4) (493 SE2d 235) (1997).

6. Finally, Johnson contends that the trial court's "repeated comments" suggested that he was partial to the State.

There was no such objection made below, however, and we will not consider it here for the first time. *Thomas*, supra.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED JUNE 25, 1999.

*Carolyn E. Moller*, for appellant.

*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.