## A00A0007. ARMSTRONG v. THE STATE.
### (537 SE2d 147)

POPE, Presiding Judge.

William Michael Armstrong appeals from his conviction on one count of false imprisonment.[1]

Viewed in the light most favorable to the verdict, the evidence showed that Lisa Aldridge went to visit Armstrong at his brother's house on the afternoon of August 3, 1997. Aldridge testified that she and Armstrong had been "friends and lovers" for about a year. After an evening spent drinking beer and smoking marijuana, both Aldridge and Armstrong were drunk. Aldridge decided to stay the night. The living room had two twin beds, and Armstrong told Aldridge to sleep on one of the beds, while his brother slept on the other. Armstrong decided to sleep outside in his car because he had hurt his back and the car seat was firmer than the bed.

The next thing Aldridge remembered was Armstrong pulling her out of the bed by her hair at around 2:00 a.m. He then dragged her

---

[1] Armstrong originally was charged with false imprisonment and simple battery, but the jury acquitted him on the battery count.

out of the house, onto the porch, down a set of concrete steps and across a rocky yard. He began beating her head against the concrete and hitting her repeatedly. He then locked Aldridge in his garage. The next morning, Armstrong returned, and Aldridge was able to persuade him to let her drive him to a store for some coffee. Aldridge's car was parked within a locked enclosure, and Armstrong had to open a padlock to let them out. She dropped Armstrong at the store and then drove to a police station to report what had happened. Aldridge suffered a dislocated shoulder, a black eye and numerous scrapes and abrasions. She missed two weeks of work as a result of her injuries.

1. To prove false imprisonment "all that is required is there be an arrest, confinement or detention of the person, without legal authority, which violates the person's personal liberty (i.e., against his or her will)." (Citation and punctuation omitted.) *Rehberger v. State*, 235 Ga. App. 827, 828 (1) (510 SE2d 594) (1998). See also OCGA § 16-5-41 (a). Aldridge's testimony established all of the elements of false imprisonment. Although Armstrong argues that Aldridge's testimony was not credible and that his testimony regarding what happened that night was more "rational and logical," the jury was not required to believe his version of events. Matters of witness credibility are entirely within the jury's purview. *Johnson v. State*, 238 Ga. App. 677 (1) (520 SE2d 221) (1999). We find sufficient evidence in the record to sustain Armstrong's conviction. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Armstrong also asserts that the trial court erred in recharging the jury. During deliberations, the jury raised two questions: (1) "Please define 'legal authority.' " and (2) "What does Georgia law state regarding a citizen's obligation to constrain an impaired individual?"

In response, the trial court first repeated the jury's questions and, in doing so, substituted the word "confine" for "constrain" in the jury's second question. The court then reminded the jury that they should take into consideration the court's entire jury charge in reaching a verdict, that the recharge operated together with the prior charge and that one was not any more important than the other. The judge then charged the jury as follows:

> A person commits the offense of false imprisonment when in violation of the personal liberty of another he confines or detains such person without legal authority. Legal authority means without any authority to do so. Georgia law sets no mandate with regard to the constraint of an impaired individual.

Armstrong asserts three errors in this charge. He first argues that the trial court confused the jury by using the word "confine" instead of "constrain" in repeating the jury's question. Second, he asserts that the recharge was misleading because the trial court did not include the word "arrest" in defining the offense of false imprisonment. And third, he contends that the last sentence of the charge misstated the law because it did not take into consideration Georgia's dram shop law. OCGA § 51-1-40.

We find that the trial court's interchanging of the words "confine" and "constrain" was not misleading or confusing as the two words are closely related in meaning. Indeed, American Heritage Dictionary (2nd college ed. 1991) states that "constrain" means "to keep within close bounds; confine." "A mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error." *Matthews v. State*, 268 Ga. 798, 805 (7) (493 SE2d 136) (1997).

Further, although the trial judge did omit the word "arrest" in recharging the jury regarding false imprisonment, we find no reversible error. The charge given was consistent with the language of the indictment and the evidence at trial where there was no assertion that an "arrest" had occurred. Thus we are satisfied that the jury could not have been misled or confused by the trial court's slip of the tongue in this instance. See generally *Caldwell v. State*, 167 Ga. App. 692, 695 (4) (307 SE2d 511) (1983). Cf. *Chadwick v. State*, 236 Ga. App. 199, 201-202 (2) (511 SE2d 286) (1999).

Nor do we find error in the trial court's statement that Georgia law does not mandate the constraint of an impaired individual. We can find no law in this state that places a legal duty on a private citizen to restrain or constrain someone who is drunk or otherwise impaired. Georgia's dram shop legislation does address the duties of a provider of alcoholic beverages. That statute insulates the provider from liability to third persons except where he or she wilfully, knowingly and unlawfully provides such beverages to a minor or to someone in a state of "noticeable intoxication, knowing that such person will soon be driving a motor vehicle. . . ." OCGA § 51-1-40 (b). Therefore, the statute sets forth a basis for civil liability where an alcohol provider knowingly continues to serve alcohol to an intoxicated person. But nothing in that statute or any other provision of Georgia law mandates that a provider of alcoholic beverages must prevent an intoxicated person from driving.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JULY 10, 2000.

*Frederick M. Scherma*, for appellant.

*Patrick H. Head, District Attorney, John C. Richter, Debra H. Bernes, Maria B. Golick, Assistant District Attorneys*, for appellee.