## S08A1696. WILSON v. THE STATE.
## S08A2035. FRAZIER v. THE STATE.

(675 SE2d 11)

BENHAM, Justice.

Appellants Travis Wilson and Lanny Frazier were indicted and tried together, and both were found guilty of murdering Waylon George and of several other crimes.[1] On appeal, Wilson contests the trial court's rulings on the voluntariness of a post-arrest statement he made to police and on the denial of his motion to sever his trial from that of Frazier. Frazier also takes issue with the voluntariness of his post-arrest statement to police, and contends the trial court erred when it imposed sentences on both the malice murder and the aggravated assault convictions.

1. The State presented evidence that the victim was shot in the parking lot of a Cobb County apartment complex where he had arranged to meet someone to purchase cocaine. A woman with the victim testified she had driven the victim to the apartment complex and that a white Montero sport utility vehicle parked beside her car shortly after she and the victim arrived. The victim exited the witness's car to dispose of fast-food wrappings and, as he returned, the witness heard him say "Oh" and saw him raise his hands. She then heard a shot and saw a person with a gun leaning out the window of the passenger side of the white SUV. The white SUV then left the scene.

Using telephone numbers recently stored on the victim's cellular telephone, police learned that co-indictee Andrew Markus Foster[2]

---

[1] Frazier was found guilty of malice murder, two counts of felony murder, aggravated assault, and conspiracy to commit armed robbery (the latter two charges being the predicate felonies of the felony murder charges). Wilson was found guilty of two counts of felony murder, conspiracy to commit armed robbery and aggravated assault (the latter two charges being the predicate felonies of the felony murder charges). The victim was killed February 26, 2005, and appellants were arrested two weeks later. The Cobb County grand jury's true bill of indictment against them and a third individual was filed May 27, 2005. Wilson and Frazier's trial commenced on October 17, 2005, and concluded with the return of the jury's verdicts on October 21, 2005. On October 21, appellants were sentenced to life imprisonment for murder, with Frazier receiving a concurrent twenty-year sentence for aggravated assault and a concurrent ten-year sentence for conspiracy to commit armed robbery, and Wilson receiving a concurrent twenty-year sentence for aggravated assault. The remaining felony murder convictions were vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Both appellants filed timely motions for new trial, with Frazier filing on November 2, 2005, and Wilson on November 4, 2005. A hearing on Wilson's motion was held on September 21, 2007, and a hearing on Frazier's motion was held on November 14, 2007. Wilson's motion was denied on October 11, 2007, and he filed a timely notice of appeal on October 22, 2007. The appeal was docketed in this Court on June 25, 2008, and oral argument was heard October 7, 2008. Frazier's motion for new trial was denied the same day it was heard (November 14, 2007) and he filed a timely notice of appeal on December 6, 2007. The appeal was docketed in this Court on August 14, 2008, and submitted for decision on the briefs.

[2] Foster was tried separately and his conviction was reversed on appeal and remanded for

knew the victim had $1,500 and knew where the victim had arranged to purchase cocaine. Using Foster's telephone records, police discovered Foster had made telephone calls to appellants shortly before the victim was killed. Upon their arrests, Wilson and Frazier separately received notice of rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), separately executed a written waiver of those rights, and separately underwent questioning by police. Digital recordings of the interviews were made but were not played before the jury. Rather, during the State's case-in-chief, a detective testified to statements made by Wilson and Frazier during their separate interviews, using a transcript prepared by the State. Wilson told police Foster had called him and asked him to rob someone who was carrying $1,500. Wilson drove his mother's white Montero SUV to Foster's home where a gun was placed in his vehicle and he was told where the victim was located and the color and type of car he was using. Wilson arrived at the site and saw the victim get shot. He returned to Foster's house where the weapon, which he described as a "rifle-type," was returned to Foster. In his interview, appellant Frazier told police that Foster had called him and asked him to rob someone of $1,500 and to come to Foster's home for a weapon. Frazier took the rifle, which he knew to be loaded, from Foster and learned from Foster where to find the victim and what type of car he was using. Frazier said that, as the victim walked back to his vehicle from the trash dumpster, Frazier put Foster's rifle out the window and told the victim to "give it up." Frazier told police the rifle fired, striking the victim, when the victim yelled and grabbed the barrel of the rifle. After describing the weapon and looking at pictures of various firearms, Frazier identified the weapon used as a Ruger .223-caliber semi-automatic rifle.

Police recovered such a firearm, measuring 37 inches, from the home of Foster's father. A firearms examiner testified that testing established that the .223-caliber cartridge case found at the scene of the shooting had been fired from that rifle. The firearms examiner fired a series of shots from the rifle, with each shot fired six inches farther away from a target than the previous shot, and the test revealed that stippling and powder residue were deposited on the target up to the point when the rifle was fired from a maximum of three feet from the target. The medical examiner who had performed an autopsy on the victim testified that the lack of stippling and powder residue on the victim and his clothing led him to conclude that the muzzle of the rifle was more than three feet from the victim when the gun was fired. He testified that, had the victim been

a new trial. *Foster v. State*, 283 Ga. 484 (660 SE2d 521) (2008).

holding the barrel of the rifle at the time it was fired, the victim's hands would have burn marks and his skin and clothing would have contained powder residue. The victim's hands were not burned and there was no residue on his skin or clothing.

The evidence was sufficient to authorize a rational trier of fact to find appellants guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant Frazier contends the trial court erred when it did not find that his aggravated assault conviction merged as a matter of fact into his malice murder conviction, and imposed sentences on both convictions. OCGA § 16-1-7 (a) provides a defendant with substantive double jeopardy protection by prohibiting multiple convictions and punishments for the same offense. *Drinkard v. Walker*, 281 Ga. 211, 212 (636 SE2d 530) (2006). One may not be convicted of more than one crime if one crime is included in another (OCGA § 16-1-7 (a) (1)), and, for purposes of this appeal, aggravated assault is included in the crime of malice murder when aggravated assault "is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [malice murder]." OCGA § 16-1-6 (1). When the victim of both the aggravated assault and the malice murder is the same person, the aggravated assault generally is a crime included in the malice murder. See, e.g., *Bell v. State*, 284 Ga. 790, 791 (1) (671 SE2d 815) (2009); *Ludy v. State*, 283 Ga. 322 (4) (658 SE2d 745) (2008); *Teal v. State*, 282 Ga. 319, n. 1 (647 SE2d 15) (2007). However, in light of the wording of the count of the indictment charging aggravated assault in the case at bar and the instructions given the jury by the trial court, we conclude that aggravated assault, as pled and proven in this case, did not merge as a matter of fact into malice murder.

The malice murder count of the indictment charged Frazier with causing the victim's death by shooting him with a firearm and specified the weapon as a .223-caliber rifle. To establish the crime, the State proved that the victim was killed when, with malice aforethought, Frazier shot him with a .223-caliber rifle. The aggravated assault count charged Frazier with assault and listed two aggravating factors stated in the conjunctive — with intent to rob and with a deadly weapon. See OCGA § 16-5-21 (a) (1), (2). The trial court instructed the jury that both aggravating factors were material elements of the crime as pled and both had to be proven in order to convict the defendants of aggravated assault. As a result, in order to establish that Frazier committed aggravated assault as pled in the indictment, the State was required to show not only that Frazier shot the victim, but that he did so with the intent to rob him. In light

of the additional aggravating factor set out in the indictment and deemed a material element of the crime by the trial court, aggravated assault was not established by proof of the same or less than all the facts required to establish proof of malice murder. *Drinkard v. Walker*, supra, 281 Ga. at 213. Since the two crimes did not merge as a matter of fact, the trial court did not err when it imposed sentences for both crimes.

3. Each appellant contends his inculpatory custodial statement should have been suppressed as involuntarily made because it was induced by hope of benefit. Wilson asserted his inculpatory statement was induced by the lead detective's statement that his report would notify its readers of the identity of those who cooperated with police and of those who did not, and the detective's query as to how Wilson wished to be denoted. The detective told Wilson "the best thing you can do is level with us" and encouraged Wilson to "do the right thing and help yourself out. . . ." The trial court denied the motion to suppress, finding that Wilson's statement was freely and voluntarily given. Frazier took issue with the detective's comment that Frazier could help himself by talking to the detective, the detective's offer to report Frazier's cooperation to the judge, and the detective's observation that a judge and jury would see Frazier as a "hard, stone-cold drug dealer killer" if he did not make a statement to police. The trial court denied Frazier's motion to suppress.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence. *State v. Ritter*, 268 Ga. 108 (1) (485 SE2d 492) (1997). OCGA § 24-3-50 requires that an admissible confession "must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." "The promise of a hope or benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect." *White v. State*, 266 Ga. 134 (3) (465 SE2d 277) (1996). Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment. *Preston v. State*, 282 Ga. 210 (2) (647 SE2d 260) (2007) (in the absence of an explicit promise of a lighter sentence, officer's discussion of the death penalty and life without parole was not a hope of benefit but an explanation of the seriousness of the defendant's situation); *Brown v. State*, 278 Ga. 724 (3) (609 SE2d 312) (2004) (no evidence of hope of benefit in the absence of evidence a detective led defendant to believe he would

receive a lighter sentence or immediate freedom if he confessed); *Evans v. State*, 277 Ga. 51, 53 (586 SE2d 326) (2003) (no evidence of hope of benefit in the absence of evidence an officer referred to any possibility of a lighter sentence when questioning defendant).

*Foster v. State*, 283 Ga. 484, 485-486 (2) (660 SE2d 521) (2008). Under OCGA § 24-3-50, the "remotest fear of injury" that renders a confession involuntary and inadmissible is "physical or mental torture." *State v. Roberts*, 273 Ga. 514 (3) (543 SE2d 725) (2001), overruled on other grounds in *Vergara v. State*, 283 Ga. 175 (657 SE2d 863) (2008).

Exhortations to tell the truth are not a hope of benefit that renders a confession inadmissible under OCGA § 24-3-50. An interrogator's statement to an arrestee to "help yourself out" is an encouragement to tell the truth and does not constitute an impermissible hope of benefit. *Lee v. State*, 270 Ga. 798 (2) (514 SE2d 1) (1999). See also *McKenzie v. State*, 187 Ga. App. 840 (3) (371 SE2d 869) (1988). Telling a suspect that truthful cooperation might be considered by others does not render a statement involuntary (*Taylor v. State*, 274 Ga. 269 (2) (553 SE2d 598) (2001)), and telling a suspect to "level with me" is not holding out the hope of a lighter sentence. *Cooper v. State*, 256 Ga. 234 (2) (347 SE2d 553) (1986). A detective's statement of opinion as to how a judge and jury might view a suspect's lack of cooperation does not "relate to the charge or sentence facing the suspect" (*White v. State*, supra, 266 Ga. 134 (3)), and does not constitute physical or mental torture which makes a statement involuntary under OCGA § 24-3-50. *State v. Roberts*, supra, 273 Ga. at 517. Accordingly, the trial court did not err when it denied the motion to suppress the inculpatory custodial statements made by Wilson and Frazier.

4. Wilson also contends the trial court erred when it denied his motion to sever Wilson's trial from that of Frazier, arguing that Frazier's presence at trial as a co-defendant prevented Wilson from presenting to the jury the entirety of Wilson's statement to police. The trial court refused Wilson's request to play for the jury the entire recording of Wilson's statement to police.

As noted in Division 1, supra, both defendants gave recorded statements to police following their arrests. Because each defendant implicated the other in his statement, the State did not use the recordings at trial, but prepared a transcript of each interview in which the interviewed defendant's references to his co-defendant's role in the crime were deleted. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (statement by a non-testifying co-defendant that directly inculpates the defendant is inadmissible

because admission of such evidence violates the defendant's constitutionally-protected right to confront the witness against him). Neither co-defendant testified at trial. The lead detective used the transcript of Wilson's interview when he testified on behalf of the State, and his testimony regarding Wilson's inculpatory statements is summarized in Division 1, supra. Counsel for Wilson used the transcript to cross-examine the detective and to question the detective when he was called as a witness by Wilson. In his cross-examination of the detective, counsel for Wilson brought out portions of the interview transcript which reflected that Wilson repeatedly told police he had repudiated any involvement in the suggested robbery of the victim and was not aware of the presence of the rifle in the white Montero SUV he drove to the site where the victim was killed. When the detective was called as a witness by Wilson, defense counsel's questioning brought out that Wilson had told police he had gone to the site where the victim was killed "to fight someone," and that Wilson had rejected the plan to rob the victim and did not know there was a weapon in the SUV he was driving.

Wilson sought to play the recording of his post-arrest interview with police in its entirety, citing OCGA § 24-3-38. That statute provides: "When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." The trial court denied the request, citing *Bruton*, and said it would allow defense counsel to play a redacted version of the interview. The trial court noted that the complete recording could be played if Wilson chose to testify and was thereby subject to cross-examination by Frazier. Wilson decided to forego his right to testify and defense counsel did not create a redacted version of the recording, choosing instead to rely on OCGA § 24-3-38.

Despite the statute's seemingly all-encompassing language, OCGA § 24-3-38 is not without limitation. In *West v. State*, 200 Ga. 566, 569 (37 SE2d 799) (1946), this Court observed that, once a defendant's incriminating admissions are admitted into evidence, the statute gives the accused the right to bring out another portion of the conversation in which he made the incriminating admissions, "in that [the other portion of the conversation] justifies, excuses, or mitigates the act." See *Bowe v. State*, 288 Ga. App. 376 (3) (654 SE2d 196) (2007) (error to deny motion to sever where portion of defendant's statement implicating co-defendant also contained evidence of defendant's defense antagonistic to that of the co-defendant (that he had been coerced by co-defendant into committing the crime)); *Johnson v. State*, 238 Ga. App. 677 (3) (520 SE2d 221) (1999) (not error to exclude from evidence the portion of defendant's statement

to police referring to rape victim's past sexual history since it is not a defense to rape). The statute's operation is further limited to relevant material. See *Boatman v. State*, 272 Ga. 139 (4) (527 SE2d 560) (2000) (OCGA § 24-3-38 does not make admissible parts of a document that are irrelevant to the case and to the parts of the document entered into evidence); *Brown v. State*, 270 Ga. 601 (5) (512 SE2d 260) (1999) (defendant's statement correctly edited to delete irrelevant and inadmissible references to murder victim's bad behavior); *Snow v. State*, 228 Ga. App. 649 (4) (492 SE2d 564) (1997) (rape shield law preempts OCGA § 24-3-38 with regard to the admission of that portion of defendant's statement concerning the victim's prior sexual behavior).

So, too, must the statute yield to the constitutional underpinnings of *Bruton*: when the State introduces the inculpatory portions of a defendant's statement as the admission of a party-opponent (see *Teal v. State*, 282 Ga. 319 (3) (647 SE2d 15) (2007)), the trial court correctly defuses a non-testifying defendant's attempt to use OCGA § 24-3-38 to gain admission into evidence of the remainder of the defendant's statement which includes a portion that directly inculpates his co-defendant in the crime. Where, however, the portion of the defendant's statement that directly inculpates his co-defendant also contains evidence of the defendant's defense, that portion of the defendant's statement must be admitted, and the State's ability to try defendants jointly must yield. See *Bowe v. State*, supra, 288 Ga. App. at 385. Cf. *West v. State*, supra, 200 Ga. at 569. In the case at bar, there was no evidence that the material excluded by the trial court's ruling (the portions of Wilson's recorded interview that directly inculpated Frazier) contained evidence of Wilson's defenses of withdrawal and lack of knowledge. Therefore, the trial court did not err in refusing to permit Wilson to use OCGA § 24-3-38 as the basis for introducing an unedited version of his post-arrest interview with police.

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 23, 2009 —
RECONSIDERATION DENIED APRIL 9, 2009.

*Thomas J. Ford III*, for appellant (case no. S08A1696).
*Lee W. Fitzpatrick*, for appellant (case no. S08A2035).
*Patrick H. Head*, District Attorney, *Amelia G. Pray, Jesse D. Evans, Dana J. Norman*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Reggie A. Lampkin*, Assistant Attorney General, for appellee.