S11A0818. PAYNE v. THE STATE.

(715 SE2d 104)

NAHMIAS, Justice.

In 1995, appellant Ross Vashon Payne was convicted of murdering Allen Ricks. He shot Ricks after being hit in the face, but the jury rejected his justification defense. The defendant now appeals, arguing that the evidence against him was insufficient, that the long delay in his appeal violated his due process rights, and that his trial counsel's performance and the trial court's self-defense jury instruction were inadequate. We reject these contentions and affirm.

1. (a) The evidence presented at trial, viewed in the light most favorable to the verdict, showed the following. When Allen Ricks arrived at Classie McGuire's home on the night of November 7, 1993, Payne was there with a number of other people. Ricks accidentally stepped on Payne's shoes, and although Ricks apologized, it sparked an argument. A bystander told Ricks not to "be messing" with Payne, and after Ricks told Payne he did not like "Soperton boys," Payne asked a friend to retrieve his gun from his car. But Ricks was persuaded to leave, and he and his brother went to their grandmother's house nearby. Payne stayed at McGuire's house, and one of the people there told him it "might be dangerous" to go outside.

When he arrived at his grandmother's house, Ricks initially sought a knife, but his father and grandmother calmed him down. A few minutes later, Ricks returned to McGuire's house because he had left his watch there. He entered, retrieved his watch from the dining

room table, and walked into the kitchen to talk to a friend. Ricks then started to leave the house and walked past Payne, who was sitting on a sofa in the living room. Ricks said something to Payne, pushed him, and hit him in the face, although not hard enough to cause any marks or swelling. Payne then pulled out his gun and shot at Ricks two or three times. One witness saw Ricks running away from Payne toward the kitchen immediately after the last shot. Ricks was hit twice from at least 18 to 24 inches away and later died from his wounds.

After initially fleeing the scene, Payne turned himself in to the police. In a statement, he admitted to a GBI agent that he shot Ricks.

(b) Payne contends that the State failed to disprove his justification defense because none of the State's witnesses actually saw the shooting, there was testimony that Ricks hit Payne in the face before the shooting, and the State failed to prove that Ricks was unarmed. However, the testimony that Ricks was shot from at least 18 to 24 inches away and seen running away from Payne right after the last shot indicates that Ricks was fleeing when he was shot, not locked in combat with Payne or even menacing him. See, e.g., *Wooten v. State*, 270 Ga. 425, 426 (510 SE2d 813) (1999).

Moreover, there is no evidence that Ricks had a knife, much less that he confronted Payne with one. Instead, Ricks's father testified that Ricks did not want a knife by the time he left his grandmother's house, and the eyewitness Payne called at trial never testified that she saw Ricks with a weapon. Rather, she testified only that Ricks pushed Payne and then hit him in the face — a blow that left no mark and caused no swelling.

Thus, while Payne might offer a "different account of the events than the State, (i)t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence," including the evidence relating to the defense of justification. *Avila v. State*, 289 Ga. 409, 410-411 (711 SE2d 706) (2011) (citation and punctuation omitted). And viewing the evidence in the light most favorable to the verdict, a rational jury could certainly find that Payne committed the crime for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Although we usually relegate the procedural history of our murder appeals to an opening footnote, the history here is convoluted and relates to Payne's delayed-appeal due process claim, so we will discuss it here. The crime occurred on the night of November 7, 1993. A Johnson County grand jury indicted Payne for malice murder on March 21, 1994, and at the conclusion of a three-day trial on March 29, 1995, Payne was found guilty and sentenced to life in prison. He filed an untimely motion for new trial on May 1, 1995,

which was denied four years later, after a hearing, on March 24, 1999. On September 13, 1999, this Court dismissed Payne's appeal because he had failed to file a timely motion for new trial. Then no docket entries appear for more than five years.

On June 29, 2005, Payne filed an extraordinary motion for new trial, which the trial court denied on May 23, 2006. On October 30, 2006, this Court dismissed Payne's second attempt to appeal because he failed to file the required application for discretionary appeal; our order explained the procedure for securing an out-of-time appeal.

Payne then filed a pro se motion for out-of-time appeal, and on July 2, 2007, the trial court granted the motion and authorized him to file an out-of-time motion for new trial within 45 days. Payne filed a pro se motion for new trial 35 days later, and a public defender filed another motion for new trial on his behalf 50 days after the order. After an evidentiary hearing at which Payne appeared pro se, declining appointed counsel, the trial court denied the motion on August 4, 2008. On March 10, 2009, this Court dismissed Payne's third effort to appeal because he had filed his out-of-time motion for new trial more than 30 days after the trial court granted him permission to file it, and the court had no authority to extend that time to 45 days. See OCGA § 5-5-40 (requiring a motion for new trial to be filed within 30 days of entry of the judgment); *Hood v. State*, 282 Ga. 462, 464, n. 1 (651 SE2d 88) (2007). We again instructed Payne on the proper procedure to secure an out-of-time appeal.

On March 30, 2009, Payne filed another motion for out-of-time appeal, which he renewed on April 1, 2010, with the aid of his current pro bono counsel. The trial court granted the motion on August 13, 2010, and authorized Payne to file an out-of-time motion for new trial. Payne filed his motion on September 10, 2010, and the trial court denied it on October 18, 2010. On his fourth attempt, Payne finally filed a timely and proper notice of appeal, and the case was docketed in this Court for the April 2011 term and orally argued on May 10, 2011.

(b) Payne argues that the more than 15-year delay between his conviction and this appeal violated his right to due process. "This Court has recognized that substantial delays experienced during the criminal appellate process implicate due process rights." *Chatman v. Mancill*, 280 Ga. 253, 256 (626 SE2d 102) (2006). Whether an appellate delay violates due process depends on a balancing of the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice" — which, unlike in the speedy trial context, is not presumed but must be shown. Id. at 256, 260-261 (punctuation omitted). While the length of the delay in this appeal was excessive and unfortunate, the delay did not violate Payne's due process rights, as the other three *Chatman* factors all weigh against him.

*The reasons for the delay*: Although the State bears blame for some of the delay, it is largely attributable to Payne. Not only did he fail to vigorously assert his appellate right for more than five years, as discussed below, but he acknowledges that the delays were primarily his counsel's fault. To the extent Payne's various counsel provided constitutionally effective representation, delays resulting from their decisions and his interaction with them are attributable to him. See *Vermont v. Brillon*, 556 U. S. 81 (129 SC 1283, 1287, 173 LE2d 231) (2009); *Weis v. State*, 287 Ga. 46, 51-53 (694 SE2d 350) (2010). See also *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U. S. 52, 86 (129 SC 2308, 2330, 174 LE2d 38) (2009) (Alito, J., concurring) ("[I]t is a well-accepted principle that . . . a criminal defendant is bound by his attorney's tactical decisions unless the attorney provided constitutionally ineffective assistance.").

None of the exceptions to the rule holding appellants accountable for their counsels' actions supports absolving Payne of the resulting delay. He has not shown a total " 'breakdown in the public defender system' " or a failure by the trial court to appoint counsel in a timely fashion. *Brillon*, 556 U. S. at 85 (citation omitted). His unelaborated statement that "the Public Defender system was revamped" and cost him "additional time and representation" is insufficient to demonstrate a total breakdown, and in any event, some of Payne's appellate attorneys were retained, not appointed. In addition, while a determination that some of Payne's counsel provided some form of ineffective assistance may be implicit in the trial court's granting motions for out-of-time appeal, Payne has not identified which periods of delay are attributable to those errors, nor did he elicit testimony from those appellate counsel to support his ineffectiveness claims. See *Chatman*, 280 Ga. at 258-259 (rejecting the argument that ineffective assistance caused the appellate delay because the appellant did not elicit the testimony from his counsel necessary to overcome the presumption of strategic delay). Responsibility for the delay, therefore, is largely Payne's.

*The defendant's assertion of his appellate rights*: Payne also failed to show that he asserted his appellate rights for much of the more than 15-year delay. In particular, during the more than five years between 1999 and 2005, nothing was filed in this case. Payne obliquely attempts to justify the inaction by explaining that his family was "attempt[ing] to locate new counsel" during that time; that the 2003 reorganization of the public defender system somehow affected his representation; that the two attorneys he hired during that period took no action on his behalf; and that hearings scheduled for late 2005 were continued at the request of his counsel. Yet nowhere does Payne explain what specific steps, if any, he took to

press for his appeal during this time, including any attempts to contact his two allegedly inactive attorneys. See *Owens v. State*, 286 Ga. 821, 827 (693 SE2d 490) (2010) (rejecting defendant's delayed-appeal due process claim partly because he failed to specify when he attempted to contact his counsel about his case). Payne's failure to vigorously assert his appellate rights for several years weighs against him.

*Prejudice*: Payne has also failed to show actual "prejudice to [his] ability to . . . assert his arguments on appeal" so that there is a "reasonable probability that, but for the delay, the result of [this] appeal would have been different." *Chatman*, 280 Ga. at 260 (citation and punctuation omitted). He asserts that his lawyers' protracted incompetence led him to represent himself in the hearing on his 2008 motion for new trial, suggesting that his own ineffectiveness deprived him of evidence to support his ineffective assistance of trial counsel claims. But the trial court warned Payne extensively about the dangers of self representation, and Payne even turned away an attorney who was available to him at the hearing. He cannot complain now of prejudice from his own properly informed decision.

Payne also says the delay has left him unable to locate his trial counsel to respond to his ineffective assistance claims. But he does not detail what efforts he made to contact her, see *Owens*, 286 Ga. at 827, and we must assume that her testimony would not support his claims. See *Russell v. State*, 269 Ga. 511, 511 (501 SE2d 206) (1998) ("In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome this presumption.").

Finally, Payne says that he cannot secure a fair retrial because witnesses' memories have likely faded and evidence has probably been lost. But any prejudice a defendant might suffer in a retrial is irrelevant unless he first shows prejudice to his appeal. See *Chatman*, 280 Ga. at 260. And in any event, Payne's generalized speculation about the delay's effect on witness memories and evidence is not the kind of "specific evidence" required to show prejudice in the appellate-delay context. *Loadholt v. State*, 286 Ga. 402, 406 (687 SE2d 824) (2010). For these reasons, we conclude that the lengthy delay in Payne's appeal has not deprived him of due process.

3. Payne contends that he received constitutionally ineffective assistance from his counsel at trial. To prevail on this claim, Payne

must show that his trial counsel provided deficient performance and that, but for that unprofessional performance,

there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984).

*Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010).

(a) Payne contends that his counsel failed to support his justification defense by introducing into evidence a GBI agent's notes of his post-arrest statement, alleging that the notes reflected Payne's fear that Ricks carried a knife and that Ricks told Payne, "I'm going to get you," on the night of the shooting. These statements would normally be inadmissible by Payne as self-serving hearsay. See *Parker v. State*, 276 Ga. 598, 598 (581 SE2d 7) (2003). However, he argues that they would have been admissible under *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), if his counsel had not neglected to file the pretrial notice required for *Chandler* evidence. See Uniform Superior Court Rule 31.1. Payne's premise is faulty, because his representations were not *Chandler* evidence. *Chandler* applies to "evidence of *specific acts of violence* by a victim *against third persons*," 261 Ga. at 407 (emphasis added), not evidence of a victim's threats to a defendant or evidence that the victim might have had a weapon but had not used it against a third person. Thus, Payne's trial counsel cannot be faulted for not filing a notice to seek admission of the investigator's notes under *Chandler*.

In one paragraph in his brief on appeal, Payne suggests an alternative ground on which his counsel could have offered the GBI agent's notes about his statement, the so-called "rule of completeness." Because the State introduced evidence that he confessed to the shooting in his post-arrest statement, the argument goes, Payne had a right to introduce the rest of the statement to give it context. See OCGA § 24-3-38 ("When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence."); *Wilson v. State*, 285 Ga. 224, 229 (675 SE2d 11) (2009). It is doubtful that Payne has preserved this claim, as he points to nothing in the record to suggest that he ever raised this alternative ground for admissibility (and thus an alternative ground for trial counsel's deficient performance) in the trial court, and he certainly failed to assert it in his 2008 motion for new trial and the associated evidentiary hearing or in his 2010 motion for a new trial.

Even assuming the claim is properly presented, however, Payne has not shown that his trial counsel's failure to seek admission of the notes under the rule of completeness was professionally deficient or prejudicial. We must presume that his counsel acted strategically, *Brown v. State*, 288 Ga. 902, 908 (708 SE2d 294) (2011), particularly

because Payne did not call her to testify at the evidentiary hearing on the motion for a new trial. See id.[1] Trial counsel could reasonably have decided not to try to offer more of Payne's statement through the GBI agent, who might have commented unfavorably on Payne's tone and related matters. In addition, safely offering the bits of the agent's notes to which Payne now points would have required obtaining favorable rulings from the trial court to redact other, negative information in the notes like references to his criminal history. Counsel also could have recognized that the two points on which Payne now focuses were similar to evidence presented elsewhere at trial. Ricks's father testified that Ricks initially wanted a knife when he arrived at his grandmother's house, and another witness testified that she told Payne not to go outside after Ricks left the McGuire house because "it might be dangerous." Because similar evidence was presented to the jury, we also cannot say that the decision not to seek admission of other portions of Payne's statement had a reasonable probability of affecting the result of the trial.

(b) Payne also contends that his trial counsel was ineffective because she failed to impeach the GBI agent who interviewed Payne after the shooting. On redirect examination, the agent denied that Payne expressed "a fear of imminent bodily harm or a fear of being killed by Allen Ricks." Payne asserts that his counsel should have cross-examined the agent with the portion of the agent's notes that recount Payne's saying he was "frightened of Ricks" because of what "other people had told him about Ricks."

This claim again fails to overcome the presumption that trial counsel acted strategically. Decisions about what questions to ask on cross-examination are quintessential trial strategy, see *Simpson v. State*, 277 Ga. 356, 359 (589 SE2d 90) (2003), and Payne's counsel — who we again note did not testify at the motion for new trial hearing — could have declined to challenge the agent's testimony for good reason. Payne's claim that he was "frightened of Ricks" would not demonstrate that he expressed a reasonable fear of "imminent use of unlawful force" that could cause "death or great bodily injury," OCGA § 16-3-21 (a). Thus, the agent could have easily explained away his failure to mention that portion of his notes — and could have reiterated to the jury that Payne never expressed the fear of imminent death or great bodily harm needed to support a justification defense. We cannot conclude that trial counsel's decision not to

---

[1] We recognize that Payne's trial counsel was later disbarred as a result of misconduct unrelated to this case, but this does not affect our ineffective assistance analysis. See *Harris v. State*, 279 Ga. 304, 306 (612 SE2d 789) (2005).

cross-examine the GBI agent on this point was either professionally deficient or prejudicial.

4. Payne contends that the trial court gave an inadequate jury instruction on his self-defense theory because the court did not properly instruct the jury that "the 'reasonable person' standard is measured by a reasonable person in the circumstances of" the defendant and then detail the entire context of the shooting. However, the trial court used the appropriate pattern jury charges, including explaining that the "standard is whether the circumstances were such that would excite not merely the fears of the defendant, but the fears of a reasonable person." This was an accurate statement of the law. There is no requirement that the trial court summarize for the jury all of the circumstances surrounding the shooting; instead, it is for the jury to determine the circumstances from the evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 12, 2011.

*Strickland, Brockington & Lewis, Bryan P. Tyson*, for appellant.
*Craig Fraser, District Attorney, Robert B. Faircloth, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.