## S11A1886. CARRUTH v. THE STATE.

(721 SE2d 80)

THOMPSON, Justice.

Appellant Terrence Carruth was convicted of malice murder and other related offenses in connection with the stabbing death of Kyrief Mosby, and aggravated stalking of Loretta Potter.[1] On appeal,

---

[1] On May 8, 2008, a DeKalb County grand jury returned an indictment charging Carruth with malice murder, felony murder while in the commission of an aggravated assault, and aggravated assault in connection with the stabbing death of Kyrief Mosby, and aggravated stalking of Loretta Potter in violation of a probation order prohibiting Carruth from having contact with Potter. The crimes occurred on February 6, 2008. Trial commenced on August 10, 2009, and on August 14, 2009, a jury found Carruth guilty as charged. On the same day, Carruth received a life sentence for malice murder plus ten years consecutive for aggravated stalking. The remaining convictions were merged and vacated by operation of law under *Malcolm v. State.* 263 Ga. 369 (434 SE2d 479) (1993). Carruth filed a motion for a new trial on September 10, 2009, which he amended on May 17, 2010 and April 12, 2011. The motion as amended was denied on June 20, 2011. Carruth filed a timely notice of appeal. The case was docketed to the September 2011 term of this Court. Oral argument was heard on November 8, 2011.

Carruth asserts, inter alia, that he was denied effective assistance of trial counsel. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that Loretta Potter ("Potter") and Carruth had been in a physical relationship for four years beginning in the summer of 2003. In 2005, Potter and Carruth moved in with Potter's sister, Tanya Potter ("Tanya"), and the couple lived there for about a year. They subsequently moved to their own apartment because Carruth and Tanya did not get along.

In May 2007, after accusing Potter of having a relationship with another man, Carruth attacked her in their apartment. On this occasion, he choked and punched her while dragging her from room to room and threatening to inject her with a syringe filled with cleaning fluids. Potter was able to escape and notify the police. As a result, Carruth was arrested and ultimately pled guilty to charges in Rockdale County stemming from that incident. He was sentenced to a period of incarceration and, as a special condition of probation, was prohibited from having any contact with Potter. When Carruth was released from jail, he nonetheless contacted Potter, and they resumed their relationship. At that time, Potter was living with Tanya and Tanya's boyfriend, Mosby, the murder victim. Tanya and Mosby refused to allow Carruth to visit Potter at their home.

A few days before Mosby was killed, Potter was at Carruth's apartment. He became angry with her because she refused to take a trip with him, and he punished her by covering her mouth with duct tape and binding her hands. Potter convinced Carruth to let her go, and she returned to her sister's home. Potter did not report the incident to the police.

The evening before the murder, Carruth showed up outside a convenience store where Potter was working, and he observed her through a window. As a result, Potter had her work location changed to a different convenience store in the area. In the hours leading up to the stabbing, Carruth placed multiple calls and text messages to Potter's phone. Potter responded in a text message that she would not communicate with him any longer. Carruth showed up at Potter's new work location and motioned through the window for her to come outside. When she refused, he entered the store and asked to talk to her. Her co-workers shielded her, and he ultimately left. Surveillance video captured the scene. Potter then called the police and also asked Tanya to come to the store with documentation of the no contact order to show to the police. Mosby accompanied Tanya to the convenience store with the document Potter requested. However, the officer refused to seek an arrest because the document Potter produced was a letter from the county victim/witness assistance program, and not an official court document.

Minutes later, as Tanya and Mosby returned home, Carruth ambushed Mosby in their driveway pushing him against the side of the house and stabbing him repeatedly. Tanya was able to get into the house, and Carruth fled from the scene. Police retrieved a distinctive knife near the house which Potter later identified as belonging to Carruth. Mosby sustained 18 knife wounds, including a fatal wound to the neck and thorax.

Potter was taken in a patrol car to the scene of the stabbing. During the ride there, she received text messages and calls from Carruth. At one point, she handed her phone to the officer who heard Carruth say, "Go pick up what I left behind. I'm on my way to New York."

1. The evidence was sufficient for a rational trier of fact to find Carruth guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Carruth testified at trial and maintained that he acted in self-defense. In an effort to support this theory, he offered testimony from the wife of a friend who stated on direct that Carruth came to her home early one morning around the time of the 2008 Super Bowl game (although this was intended to coincide with the night of the stabbing, no date was specified). On cross-examination, the State elicited from the witness that Carruth told her he had injured someone. On re-direct, the witness testified Carruth was "shaken up," "hysterical," and bleeding from his right hand. When asked whether Carruth told her anything, the witness began, "He had went to visit one of his friends and . . . ." The State objected on hearsay grounds. Defense counsel responded that the testimony was admissible as a prior consistent statement. The court sustained the State's hearsay objection. On re-direct, defense counsel again attempted to ask the witness her "understanding" of what happened that night, and the court again sustained an objection from the State.

On appeal, Carruth asserts that the trial court violated OCGA § 24-3-38,[2] by refusing to allow the witness to testify to the "complete statement" Carruth made to her in the hours following the stabbing, as such would have tended to support his self-defense claim. See generally *Wilson v. State*, 285 Ga. 224 (4) (675 SE2d 11) (2009). Our review of the record reveals that defense counsel did not raise the "rule of completeness" as a ground for allowing the witness to testify to Carruth's entire statement. Errors not raised in the trial court

---

[2] OCGA § 24-3-38 provides: "When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." For a discussion of the meaning of OCGA § 24-3-38, see Milich, Georgia Rules of Evidence, § 6.3 at 54-55 (1995).

will not be heard on appeal. *Westmoreland v. State*, 287 Ga. 688, 691 (3) (699 SE2d 13) (2010). See also *Higuera-Hernandez v. State*, 289 Ga. 553, 555 (2) (714 SE2d 236) (2011) (parties may raise on appeal only the same objections that were properly preserved below). Thus, the "rule of completeness" as a ground for admissibility is not preserved for review.[3] See generally *Payne v. State*, 289 Ga. 691 (3) (a) (715 SE2d 104) (2011) (it is doubtful that OCGA § 24-3-38 as a ground for admissibility is preserved where defendant points to nothing in the record to suggest that he ever raised this ground at trial).

3. Alternatively, Carruth claims that his counsel was ineffective by not arguing the rule of completeness as a means to get his entire post-stabbing statement into evidence.

In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), appellant " 'must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. [Cit.]' " *Westmoreland*, supra at 691 (3). We need not analyze the deficient performance prong of *Strickland* if we determine that the prejudice prong has not been satisfied. *Peterson v. State*, 284 Ga. 275 (663 SE2d 164) (2008).

At an evidentiary hearing on the motion for new trial, the witness whose trial testimony had been curtailed testified to the entirety of the statement Carruth allegedly made to her on the night of the stabbing. In essence, Carruth told her that Mosby produced the knife, that Carruth wrestled it from Mosby, and that he stabbed Mosby in self-defense. In denying the motion for new trial on the ground of ineffective assistance of trial counsel, the court determined that the witness was not credible, and that the outcome of the trial would not likely have been different had the jury heard the entirety of Carruth's statement. In reviewing a claim of ineffective assistance of counsel, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000). There were discrepancies between Carruth's trial testimony and the account of the witness at the hearing on the motion for new trial. We agree with the trial court's credibility determination as well as its conclusion that an acquittal would not likely have resulted had the jury heard the witness' testimony in its

---

[3] Appellate counsel recognized both at the hearing on the motion for new trial and on appeal to this Court that trial counsel failed to assert OCGA § 24-3-38 as ground for admissibility of the entire statement.

entirety.[4] Accordingly, Carruth has not carried his burden under *Strickland*.

4. Carruth submits that the trial court erred in refusing to sever the count of the indictment charging aggravated stalking of Potter from the counts relating to the murder of Mosby.

The evidence established that in January 2008, Carruth pled guilty to false imprisonment, family violence simple assault (OCGA § 16-5-20 (d)), family violence battery (OCGA § 16-5-23.1 (f)), and obstruction of a person making an emergency telephone call in connection with the 2007 attack on Potter in Rockdale County. Carruth was sentenced under the First Offender Act, and as a special condition of probation, he was "to have no contact with the victim Loretta Potter." In support of his severance claim, Carruth argues that while the first offender plea is admissible to prove the predicate to the charge of aggravated stalking in that he allegedly violated a condition of probation,[5] it is inadmissible with regard to the murder counts of the indictment. We find, however, that the trial court properly exercised its discretion in denying the severance motion.

> This court has held that a defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges. However, where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique.

*Simmons v. State*, 282 Ga. 183, 185 (4) (646 SE2d 55) (2007). A trial court does not abuse its discretion in denying a severance of counts "where evidence of one charge would be admissible in the trial of another." Id.

The aggravated stalking offense took place at the convenience store and was ongoing at the time that Tanya and Mosby came to Potter's aid by delivering evidence of the no contact order (the predicate for aggravated stalking). The ambush and murder occur-

---

[4] We make no determination as to whether the evidence would have been admissible under the rule of completeness.

[5] OCGA § 16-5-91 (a) provides:

> A person commits the offense of aggravated stalking when such person, in violation of a . . . condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person . . . without the consent of the other person for the purpose of harassing and intimidating the other person.

red just minutes later when the two returned home; therefore, the acts were connected as a single scheme or plan. In addition, evidence of Carruth's turbulent relationship with Potter and his stalking of her was relevant to explain Carruth's animosity for Tanya and Mosby and his motive for the fatal attack. Thus, evidence of the stalking offense would be admissible in a separate murder trial. It follows that the trial court did not abuse its discretion in refusing to sever the counts. *Simmons*, supra at 185 (4).

5. Even assuming, arguendo, that the issue is properly before the Court, we find no error in the admission at trial of Carruth's first offender plea.

> [T]he first offender record of one who is currently serving a first offender sentence or of one who has successfully completed the first offender sentence may not be used to impeach the first offender on general credibility grounds (i.e., by establishing that the first offender has been convicted of a felony or crime of moral turpitude) because no adjudication of guilt has been entered. . . . However, "to ensure that in seeking the truth the jury is not misled by false or deceiving testimony," a first offender's record is admissible to impeach the first offender by disproving or contradicting facts testified to by the first offender.

*Davis v. State*, 269 Ga. 276, 277 (2) (496 SE2d 699) (1998). Carruth testified at trial that although he did plead guilty to the Rockdale County indictment, he was in fact innocent of those crimes. His plea under the First Offender Act was admissible to impeach that testimony. Id.

6. Finally, Carruth contends that the trial court erred in refusing to give his requested jury instruction on mutual combat. Trial counsel submitted a written request to charge on the law of mutual combat and objected at the charge conference when the court informed counsel it would not give such a charge; however, there was no objection to the actual jury charge as given. Georgia law requires that a criminal defendant inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. OCGA § 17-8-58 (a). Objections at a charge conference do not suffice to preserve objections to the charge as subsequently given. *Palmer v. State*, 270 Ga. 278 (2) (507 SE2d 755) (1998). Failure to object to a portion of the charge in accordance with OCGA § 17-8-58 (a) precludes appellate review "unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b).

Despite the lack of objection below, the omission of the jury

instruction was raised on motion for new trial and enumerated as error and argued on appeal in this case. In accordance with our recent decision in *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011), and the mandate of OCGA § 17-8-58 (b), we must review the omission of the charge on mutual combat to determine whether it constituted plain error, regardless of the lack of preservation below. *Kelly* adopted the four-prong federal standard as set forth in *Puckett v. United States*, 556 U. S. 129 (II) (a) (129 SC 1423, 173 LE2d 266) (2009), as follows:

> First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the [trial] court proceedings." Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the discretion to remedy the error — discretion which ought to be exercised only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' "

*Kelly*, supra at 33 (2) (a). Reversal is authorized only if all four prongs are satisfied — a "difficult" standard indeed. Id.

"Mutual combat occurs when there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 4th ed. 2007, § 2.10.43. See also OCGA § 16-3-21 (b) (3); *Donaldson v. State*, 249 Ga. 186, 188 (3) (289 SE2d 242) (1982) ("[m]utual combat is not a mere fight or scuffle. It generally involves deadly weapons and the mutual intention of using them"). Compare *Carreker v. State*, 273 Ga. 371 (2) (541 SE2d 364) (2001) (mutual combat charge authorized where evidence shows "both parties intended to resolve their differences by fighting each other"). Carruth testified in his own defense that Mosby approached him and initiated an unprovoked fist fight; Mosby then produced a knife from under his jacket; Carruth got possession of the knife and stabbed Mosby repeatedly. Tanya testified that Carruth ambushed and attacked Mosby. In neither scenario was there evidence of intent to engage in a mutual fight, or "combat by agreement." OCGA § 16-3-21 (b) (3). Since a charge on mutual combat was not adjusted to the evidence, the alleged legal error is neither "clear [n]or obvious."

*Kelly*, supra at 33. Accordingly, the omission in the charge does not constitute plain error under OCGA § 17-8-58 (b).[6]

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 9, 2012.

*Gerard B. Kleinrock*, for appellant.

*Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General*, for appellee.

---

[6] We note that the trial court gave a complete charge on justification as set forth in OCGA § 16-3-21.