S90A0660. IRBY v. THE STATE.
(396 SE2d 210)

HUNT, Justice.

Charles Anthony Irby was convicted by a jury and sentenced to life in prison[1] for the murder of Machelle Y. Briggs, who had been

---

[1] The victim died on August 11, 1987. The defendant was indicted in September 1989. He was tried and convicted on November 27, filed his motion for new trial on November 30, and his amended motion for new trial on January 30, 1990; his motion for new trial was denied on February 1, 1990. The court reporter certified the transcript on February 15. The notice of appeal was filed on February 13; the case was docketed in this court on February

inducted into the military only twelve weeks before she was found dead at a motel in Liberty County. Irby was in charge of processing women personnel at Fort Stewart; the victim was among the new recruits assigned to him.

The owner of the Midway Motel in Hinesville testified she looked into the victim's room on the morning of August 29, 1987, and saw it had been cleaned up and one of the beds stripped. The next day, she came back into the room to make the bed and discovered the victim's nude body under the unused bed. No clothes or other personal belongings were found in the room. Police investigation revealed the victim had rented the room and had stayed at the motel on three previous occasions. Fingerprints were found on the headboard of the bed under which the victim was found. The defendant was interviewed, but he denied having been at the motel with the victim.

Two years later, during his fourth interview, the defendant admitted that after her arrival at the replacement barracks, the victim had propositioned him and he had declined, but, on this particular day, she threatened him with a false claim of sexual harassment if he refused. He claimed they went to the motel where they engaged in sex and she suddenly stopped breathing. He panicked and tried to resuscitate her through CPR, but she died at about 11:30 p.m. The defendant stated he stayed in the room the rest of the night in a state of turmoil because he was married and feared for his career. He met the cleaning lady the next morning as he left and placed the key under the door to the room. The key was found on the dresser and an investigating officer testified the key would not fit under the door. The fingerprints on the headboard matched those of the defendant, but the motel owner could not pick out the defendant in a line-up.

1. The defendant argues that the medical expert's testimony "to a reasonable medical certainty" that the victim did not die of natural causes was insufficient to meet the standard of proof, "beyond a reasonable doubt," required in a criminal case. Thus, he argues the trial court erred in refusing to direct a verdict of acquittal. OCGA § 17-9-1.

The state's expert, Dr. Kenneth Alonzo, opined the cause of the victim's death was asphyxia, but he noted no signs of either internal or external trauma to any part of the body. While the doctor admitted the physical evidence did not absolutely rule out other natural causes of death, he testified the victim's recent medical history as reflected in her army medical records and the other circumstances of her death convinced him that she had been killed by her air being cut off by something such as a pillow or bag held over her face. There were no traces of alcohol or drugs in her blood.

21, and argued on April 10, 1990, whereupon it was submitted for decision by the court.

Pretermitting whether the doctor's expert opinion itself would support a conviction, it is not the doctor's expert opinion (or any other individual bit of evidence) alone, but the totality of the evidence that must be sufficient to convince the trier of fact "beyond a reasonable doubt." Having reviewed all of the evidence presented in this case in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State*, 245 Ga. 89, 90 (263 SE2d 131) (1980). The trial court properly refused to direct a verdict in favor of the defendant.

2. The trial court denied the defendant's request for funds to hire an expert pathologist and the defendant enumerates this denial as error. At the commencement of the trial, the defendant's attorney stated he was unprepared to go on with the case due to lack of funds for an expert, but the court ordered the matter to trial. On appeal, the defendant urges this refusal deprived him of information vital to his defense under the standards of *Roseboro v. State*, 258 Ga. 39, 41 (365 SE2d 115) (1988):

> A motion on behalf of an indigent criminal defendant for funds with which to obtain the services of a scientific expert should disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services. Lacking this information, a trial court will find it difficult to assess the need for assistance.

The defendant did not meet this burden.

In his motion the defendant requested an initial amount of $500, as

> the entire case turns on the cause of death, . . . [T]here is an autopsy report which shows the cause to be asphyxiation. In order to present a defense, it is necessary that we be able to have our expert review the autopsy report and other data that we can submit and to be available to testify as to the cause of death and the possibility or probability that it was by natural causes.

Because the defendant was employed by the army and earned over $1700 a month, he barely qualified for a public defender, but one had nevertheless been appointed. Thus, the court reasoned the defendant could afford to hire his own expert to study the autopsy reports prepared by the state's witness. The defendant did not do so. We find no

abuse of discretion by the trial court in determining the defendant was able to hire an expert using his own funds. *Roseboro v. State,* supra.

3. The trial court's rulings that Irby's statements were voluntary and otherwise admissible were not clearly erroneous and will not be reversed on appeal. *McEver v. State,* 258 Ga. 768, 769 (373 SE2d 624) (1988).

4. Because he did not testify at trial, Irby claims it was error to admit in evidence his three initial statements to the police in which he denied having been with the victim at the motel. The point of his argument is that these statements, not per se incriminating, could be used for impeachment only, and, since he did not testify, there was nothing to impeach. This, of course, ignores the fact that they were inconsistent with his later statement, which contained incriminating admissions, and could properly be used to demonstrate that inconsistency, that change in his account of the events. See generally *Hill v. State,* 246 Ga. 402, 407 (271 SE2d 802) (1980). Any argument that his assertion of his right to remain silent at trial precluded the admission of his previous statements is meritless.

*Judgment affirmed. All the Justices concur, except Weltner, J., not participating.*

DECIDED SEPTEMBER 26, 1990.

*John E. Pirkle,* for appellant.
*Dupont K. Cheney, District Attorney, J. Thomas Durden, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Leonora Grant,* for appellee.

