FINAL COPY
294 Ga. 392

S13A1445. CURRIER v. THE STATE.

BENHAM, Justice.

Appellant Shawn Hollis Currier seeks appellate review of his convictions

for felony murder and related crimes stemming from the death of David

Buriles.[1]  For the reasons set forth below, we affirm.

1.  Appellant alleges the evidence at trial was insufficient to support his

convictions.

The relevant inquiry on appeal challenging the sufficiency of the

evidence is whether the evidence, viewed in a light most favorable

to the verdict, would authorize a rational trier of fact to find

---

[1] The crimes occurred on December 21, 2006.  On June 6, 2007, the Oglethorpe County grand jury returned a true bill of indictment charging appellant and his co-defendant Jasmine Jermine Hillsman with malice murder, felony murder, aggravated assault, concealing the death of another, and theft by taking of a motor vehicle.  Appellant and the co-defendant were tried before a jury from September 22 to September 26, 2008.  The trial court directed a verdict of acquittal on the charge of malice murder.  The jury found appellant guilty of all remaining charges and found Hillsman guilty only of aggravated assault.  The trial court sentenced appellant to life in prison for felony murder, ten years to serve consecutively for concealing the death of another, and ten years to serve concurrently for theft of a motor vehicle.  The charge of aggravated assault merged with the count of felony murder.  Appellant filed a motion for new trial on October 8, 2008, and an amended motion on December 29, 2012.  The trial court held a motion for new trial hearing on January 9, 2013, and denied the motion on March 18, 2013.  Appellant timely filed a notice of appeal on April 1, 2013.  The case was docketed to the September 2013 term of this Court and was orally argued on September 9, 2013.

appellant guilty beyond a reasonable doubt of the crimes for which [he] is charged. Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Cutrer v. State, 287 Ga. 272, 274 (695 SE2d 597) (2010).

Lowe v. State, 288 Ga. 662 (1) (706 SE2d 449) (2011). Here, the evidence viewed in a light most favorable to the verdict shows that about a week prior to the incident, appellant and his co-defendant Jasmine Jermine Hillsman were overheard by the co-defendant's brother Kendrick Hillsman (Kendrick) talking about the victim and saying "something bad might happen" if "people" did not keep their mouths closed. On December 21, 2006, the victim, appellant, the co-defendant, and Kendrick were at appellant's trailer home talking and drinking alcohol. At trial, Kendrick testified the victim hit appellant and, in response, appellant put the victim in a "full Nelson" wrestling hold, keeping the victim in place while the co-defendant punched the victim in the face. Kendrick says he yelled at appellant to break the fight up and, when appellant did not do so, he left the trailer because he thought the fight was "too rough." When Kendrick returned about twenty minutes later, the co-defendant was standing outside the trailer, appellant was gone, and the victim was inside the trailer lying

2

unconscious on the floor with blood coming out of his nose. The co-defendant's written statement to police, which was admitted into evidence at trial and read aloud to the jury, confirmed that appellant and the co-defendant fought with the victim and that a punch co-defendant landed to the victim's nose caused the victim to pass out. Two female acquaintances of the Hillsman brothers arrived at appellant's trailer. One of the women requested that the victim be sat upright. When Kendrick and the co-defendant sat the victim upright, the woman testified that she listened to the victim's chest and noted that he was breathing, although she heard a rattle in his chest. She stated the victim was also making noises and mumbling. Deciding the victim did not need medical attention, Kendrick, the co-defendant, and the two women left the trailer. Later on, appellant called the co-defendant and told him the victim was dead. Appellant's neighbor testified that appellant called and asked him to come over. When the neighbor arrived, appellant told him he had killed the victim, showed him the victim's body, asked him what should be done with the body, and the neighbor told appellant to call the police. Appellant then asked the neighbor to help him dispose of the body. The neighbor declined and, as he was leaving, again told appellant to call the police. Rather than contact the authorities, appellant dumped the victim's body

into a well and had the victim's car towed to a junk yard where he sold it for scrap. A few days later, appellant told the neighbor what he had done with the body and the car.

The victim's family reported him missing on December 24, 2006. When one of the women who had been at the trailer on the night of the fight saw the victim's missing person poster, she came forward with the information which eventually led to the arrests of appellant and his co-defendant. Authorities found the victim's blood on carpet samples taken from appellant's trailer. When questioned by a sheriff, appellant initially denied knowing anything about the victim's whereabouts, but he eventually admitted to disposing of the body. Authorities recovered the body on January 21, 2007. The medical examiner testified that the victim's body was too decomposed to determine the actual manner of death,[2] but he concluded the official cause of death was "homicidal violence of undetermined etiology." He noted the victim had a broken nose which was consistent with blunt force trauma, but he said that such injury was not life threatening.

---

[2] For example, the victim's brain was in a liquefied state, precluding the medical examiner from being able to examine it for any signs of blunt force trauma.

Appellant argues that because the medical examiner could not specifically identify the cause of the victim's death and because the medical examiner stated the victim's broken nose was not a fatal injury, the State failed to show that the aggravated assault underlying the felony murder charge[3] caused the victim's death and the evidence is therefore insufficient to sustain his conviction of felony murder. We disagree. When construing Georgia's felony murder statute,[4] this Court has held that causing the death of another human being means *proximate* causation. State v. Jackson, 287 Ga. 646 (2) (697 SE2d 757) (2010). "Proximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent, and unforeseen intervening cause." Id. at 654. We consider the elements of the felony not in the abstract, but in the actual circumstances in which the felony was committed. Davis v. State, 290 Ga. 757, 760 (4) (725 SE2d 280) (2012). Here it was reasonable to foresee that the victim could be fatally wounded upon

---

[3] In the indictment, the charge on felony murder reads as follows: ". . . defendants . . . did unlawfully while in the commission of a felony, to wit: aggravated assault, did cause the death of [the victim] by using their hands and fist[s] as a deadly weapon bludgeoning said victim with hands and fist[s]. . . ."

[4] OCGA § 16-5-1 (c) provides in pertinent part: "[a] person also commits the offense of murder when, in the commission of a felony, he causes the death of another human being, irrespective of malice."

5

receiving a beating from which he could not extricate himself because he was being held in place by appellant. The medical examiner's testimony was only one aspect of the State's case and could not be considered in isolation. "Pretermitting whether the doctor's expert opinion itself would support a conviction, it is not the doctor's expert opinion . . . alone, but the totality of the evidence that must be sufficient to convince the trier of fact 'beyond a reasonable doubt.'" Irby v. State, 260 Ga. 401, 403 (1) (396 SE2d 210) (1990). Here, based on the total factual circumstances of this case — namely that appellant and his co-defendant made threatening remarks about the victim days before his death, that appellant participated in the aggravated assault which rendered the victim unconscious at one point, that the victim died within a short time after the assault, that appellant made admissions to two people that he had killed the victim, and that appellant admittedly concealed the body — a rational trier of fact was authorized to find appellant guilty beyond a reasonable doubt of felony murder in spite of the fact that the medical cause of death was undeterminable due to the body's decomposition. See State v. Jackson, supra, 287 Ga. at 649-650, n. 2. Cf. Richardson v. State, 276 Ga. 548 (1) (580 SE2d 224) (2003) (evidence sufficient to convict the defendant of murder even in the

6

absence of the victim's body). Accordingly, this enumeration of error cannot be sustained.

2. Appellant alleges counsel rendered constitutionally ineffective assistance when he failed to object to an allegedly erroneous jury charge. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

Pursuant to the request of appellant, the trial court gave the following charge on involuntary manslaughter:

> I charge you that if you do not believe beyond a reasonable doubt that [defendants] are guilty of the offense of felony murder as outlined in [the] indictment but do believe that they are guilty, either/or [sic] both of them are guilty of the lesser included offense of involuntary manslaughter, I will charge you as to that. . . . [A] person commits the offense of involuntary manslaughter in the

7

commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony, in other words a misdemeanor.[5]

. . .

If you find and believe beyond a reasonable doubt that [either defendant is] guilty of the offense of involuntary manslaughter as I have just defined for you, the form of your verdict would be we, the jury, find the [d]efendants guilty of the offense of involuntary manslaughter. . . . [Y]ou would only be authorized to consider that if you believe that they are not guilty of the offense of felony murder. You have to consider the felony murder charge first. If you find them not guilty, then you would be authorized to consider the charge on involuntary manslaughter. If you do so – do consider that and find that under all the evidence and testimony along with the instruction of [t]he [c]ourt that there is a reasonable doubt or if you do not believe they are guilty or there is a reasonable doubt as to their guilt to the offense of involuntary manslaughter, the form of your verdict would be . . . we, the jury, find the [d]efendants not guilty of the offense of involuntary manslaughter.

Several charges later, the trial court gave the following instruction on rendering a unanimous verdict:

Whatever your verdict is, it must be unanimous; that is, it must be agreed by all twelve of you.

After the jury had deliberated for a while, it asked a few questions and the trial court gave the following recharge on involuntary manslaughter:

---

[5] The jury was also instructed on simple battery and battery which are both misdemeanors. OCGA §§ 16-5-23 and 16-5-23.1.

A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. Other than a felony means a misdemeanor. And in that regard, both simple battery and battery are misdemeanor charges.

Now, before you can consider involuntary manslaughter in this case, you have to first address the felony murder charge, and you have to make a decision as to the felony murder charge. If you were to find there's a reasonable doubt as to the felony murder or if you find that either or both of the [d]efendants not guilty of the felony murder, then you'd be authorized to consider involuntary manslaughter. . . . [I]f you were to find the [d]efendants guilty of the felony murder charge, you wouldn't even consider the involuntary manslaughter at all. That's only if you find them not guilty or if there's a reasonable doubt as to their guilt, then you would consider the involuntary manslaughter.

When the jury later asked whether someone could be convicted of aggravated assault coupled with involuntary manslaughter, the trial court stated they could not. The trial court further clarified:

The felony murder [charge] is predicated upon an underlying felony, and in this case an aggravated assault. Now, aggravated assault is charged as a separate count in this indictment in Count Three. So conceivably you could find somebody guilty of aggravated assault and nothing else, but you cannot find somebody guilty of felony murder without the underlying aggravated assault having been found.

Also as to the involuntary manslaughter, just like felony murder is predicated on an underlying felony, the involuntary manslaughter is predicated upon a misdemeanor. In this case ...it was either battery or simple battery would give rise to the

9

involuntary manslaughter charge. But, once again, you don't consider that until you've reached a decision as far as the felony murder charge is concerned. If you have found somebody guilty of felony murder, then you don't go any further with the involuntary manslaughter because it doesn't apply. That is what we call a lesser included offense. You can't find them guilty of both; it would have to be one or the other or neither.

Appellant argues counsel was deficient for failing to object to the instructions on involuntary manslaughter followed by the instruction on a unanimous verdict because he contends the jurors would have believed they had to be unanimous that appellant was not guilty of felony murder before they considered the issue of involuntary manslaughter during their deliberations. On appeal, this Court reviews jury charges as a whole to determine whether there is any error. DeLeon v. State, 289 Ga. 782 (3) (716 SE2d 173) (2011). Here, the instruction on unanimity spoke only to the jury's final verdict and did not concern its deliberations. The instructions merely prevented the jury from rendering a verdict that included both felony murder and involuntary manslaughter. Since the jury instructions were not erroneous, counsel was not deficient for failing to make an objection that lacked merit. Duvall v. State, 290 Ga. 475 (2) (b) (722 SE2d 62) (2012) (counsel not deficient for making

objections that would have lacked merit). As such, the trial court properly denied appellant's ineffective assistance claim.

3. Finally, appellant contends the trial court erred when it determined that his in-custody statement to police was voluntary and not induced by a hope of benefit.[6] The record shows appellant made a video-recorded statement to Madison County Sheriff Clayton Lowe during the investigation of the victim's disappearance. During the pre-trial Jackson-Denno[7] hearing, the trial court heard testimony from Sheriff Lowe and heard the audio track of the interview. Based on that evidence, the trial court ruled that the statement was admissible. Appellant contends the trial court erred because Sheriff Lowe gave him a hope of benefit when he told appellant "by not confessing" he would be letting himself get charged for murder and when he told appellant that all he could be charged with was concealing a dead body.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence. OCGA § 24-3-50 requires that an admissible

---

[6] See former OCGA § 24-3-50 (repealed effective January 1, 2013). OCGA § 24-3-50 has been replaced by OCGA § 24-8-824.

[7] Jackson v. Denno, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

confession must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. The promise of a hope or benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect. Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment.

Wilson v. State, 285 Ga. 224, 227 (3) (675 SE2d 11) (2009) (citations and punctuation omitted).

We have reviewed appellant's video-recorded statement to Sheriff Lowe. At the time of the interview, appellant was in jail on an unrelated probation violation. Sheriff Lowe read appellant his Miranda[8] rights before questioning began. Throughout the approximate 45-minute interview with Sheriff Lowe, appellant maintained that, although there had been a fight involving the victim, he did not kill the victim. In fact, appellant initially stated that the fight occurred inside his trailer while he was away,[9] and that the victim was not there when appellant came back home. Sheriff Lowe advised appellant that the evidence authorities had gathered suggested appellant was present at the scene. Sheriff

---

[8] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[9] According to appellant, he left his trailer door unlocked, and the victim had an open invitation to "crash" in his trailer whenever the victim had been drinking regardless of whether appellant was home.

Lowe then started questioning appellant as to whether he came home, found the body and then got rid of it in a panic, stating to appellant that he would be in less trouble for concealing the body, and that if appellant said nothing to help himself he was looking at more trouble because other witnesses were pointing their fingers at him for the victim's death. Appellant continued to deny being involved or knowing of the victim's whereabouts. Sheriff Lowe subsequently made a statement to the effect that there was a difference between a charge of concealing a death and "catching" a murder charge and that no one was going to come after appellant for getting rid of a dead body he found in his home. Appellant then asked Sheriff Lowe what "guarantee" he would have if he told where "them boys" had hidden the body, and Sheriff Lowe responded that he would tell the district attorney and the judge that appellant had cooperated. Appellant asked what he could be charged with if he was to tell what had been related to him about the body's whereabouts, and the Sheriff responded the most appellant could be charged with would be disposing of a body. Thereafter, appellant spent several minutes describing where the Hillsman brothers allegedly told him the body was located, and, after a while, he drew a map based on what he purportedly had been told about the body's location.

After he finished drawing the map, appellant again told Sheriff Lowe the victim was not at his house when he came home that night. A few minutes later, Sheriff Lowe said, "Why don't you just tell me what happened, . . . so we can get out of here." In response, appellant asked for a lawyer and then said he did not want one. Sheriff Lowe clarified that appellant did not want a lawyer. Appellant then made the following admission: that he was at home, that the Hillsman brothers and the victim were at his trailer drinking, that the victim got into a fight with the co-defendant, that the co-defendant had the victim in a headlock and that they tumbled into the other side of the trailer, that appellant tried to break up the fight, that the victim was passed out on the floor, that the Hillsman brothers left his trailer, and that he disposed of the body when he realized the victim was deceased and not merely passed out. After his admission, appellant added more detail to the map he had previously drawn. Sheriff Lowe again stated he would tell authorities that appellant had cooperated and concluded the interview.

When viewed in the totality of the circumstances, Sheriff Lowe did not offer appellant a lighter charge or sentence in exchange for his admission to disposing of the victim's body. Rather, appellant voluntarily made his statement

14

in direct response to Sheriff's Lowe's exhortation to tell the truth. *Wilson v. State*, supra, 285 Ga. at 228 ("Exhortations to tell the truth are not a hope of benefit. . . ."). Accordingly, the trial court did not err when it admitted appellant's statement to Sheriff Lowe at trial. Id.

Judgment affirmed. All the Justices concur.

Decided January 21, 2014.

Murder. Oglethorpe Superior Court. Before Judge Bailey.

Michael W. Tarleton, James C. Bonner, Jr., for appellant.

D. Parks White, District Attorney, Martin L. Melton III, Jean G. Mangan, Geoffrey L. Fogus, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.