**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 14, 2014**

# In the Court of Appeals of Georgia

A14A1224. MILNER v. THE STATE.

ANDREWS, Presiding Judge.

Following his December 6, 2002 indictment for one count of aggravated assault, Czerny Milner filed a motion to dismiss the indictment on May 7, 2012, arguing that his constitutional right to a speedy trial had been violated. The trial court denied Milner's motion in a December 6, 2012 order. Milner appeals, challenging the manner in which the trial court weighed certain analytical factors required by *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972). Finding no abuse of the trial court's discretion, we affirm.

The record reveals that Milner was arrested on May 26, 2002 for striking his girlfriend in the head with an axe. He was bound over to Fulton County Superior Court on June 6, 2002 and released on a $10,000 bond on June 12, 2002. A Fulton

County grand jury returned a true bill of indictment against Milner on December 6, 2002 for one count of aggravated assault. Milner's case appeared on a January 16, 2003 plea and arraignment calendar; however, Milner failed to appear, and a bench warrant was issued for his arrest. Thereafter, the trial court placed Milner's case on the administrative dead docket on September 19, 2003.

More than two years later, with his case still on the administrative dead docket, Milner filed a change of address form with the clerk of Fulton County Superior Court on December 13, 2005.[1] Milner later retained counsel, who entered an appearance on June 22, 2006 and filed a motion to set aside the bench warrant against Milner. Therein, Milner alleged that he did not receive notice of the January 14, 2003 plea and arraignment calendar and that he suffered strokes in November of 2003 and on June 20, 2004, leaving him partially paralyzed.[2] Milner also noted that his resulting

---

[1] The timing of this filing appears driven by a notice to Milner from the Social Security Administration informing Milner of the termination of his disability benefits on or about November 1, 2005.

[2] Although Milner further alleged that he had "lived at 433 Camrose Way NW Atlanta, GA 30331 since the incident," documents provided in discovery show Milner's address as 999 Cascade Avenue SW, Apt. A, Atlanta, GA 30310 - the location of the initial incident - or "no address." In addition, Milner confirmed during a May 10, 2012 hearing that he was living at 999 Cascade Avenue at the time of the incident. In any event, the trial court was unable to determine whether notice of the January 16, 2003 plea and arraignment calendar had been properly sent.

2

disability benefits were subsequently suspended due to his pending bench warrant. Following a hearing on September 11, 2006, the trial court entered an order setting aside Milner's bench warrant and bond forfeiture. During the hearing, the trial court observed that Milner's was "a really old case" and that the file was "imperfect."

In addition, the trial court rejected Milner's counsel's request to withdraw. Milner, through counsel, then filed assorted motions and requested discovery on September 18, 2006, but did not file a demand for Milner's constitutional right to a speedy trial. The State responded to Milner's discovery request on September 27, 2006 and, on the same date, demanded discovery from Milner. The record does not contain discovery responses by Milner. Although placement of Milner's case on the administrative dead docket should have been "deemed vacated and the case . . . reinstated" by virtue of the trial court's September 11, 2006 order, no activity followed the trial court's order until a December 5, 2011 status conference.

Indeed, the next filing after the State's demand for discovery on September 27, 2006 was the State's January 13, 2012 recommendation for a guilty plea. On January 17, 2012, the parties appeared for a plea and arraignment calendar. During that conference, Milner's counsel again moved to withdraw from the case; Milner consented to the request, and the trial court agreed. The trial court appointed counsel

3

for Milner, and Milner entered a plea of not guilty. Appointed counsel filed several motions and requests for discovery on January 23, 2012, but no demand for Milner's constitutional right to a speedy trial.

At a March 19, 2012 final plea calendar, the trial court placed Milner's case on the trial calendar.[3] The trial court provided notice of its April 26, 2012 trial calendar on April 9, 2012, and Milner's case was then scheduled to be called for trial on May 8, 2012. On May 7, 2012, Milner filed a motion to dismiss the indictment in which he alleged his constitutional right to a speedy trial had been violated.

During a May 10, 2012 hearing on Milner's motion, Milner stated that his prior counsel never explained a demand for speedy trial to him and never discussed the delay in his case with him. He also stated that his health had declined since 2002 because he is "getting weaker," that he was worried about the case, and that his memory had been "affected" by his strokes. Finally, Milner claimed not to recognize the victim when she was in court for a prior appearance. The trial court then spoke with Milner. The trial court acknowledged that its file was "woefully inadequate" and that "this looks like somehow or other the clerk's office fell down because it

---

[3] The trial court took judicial notice "of the Clerk's file . . . and of the Court's own published calendars . . . as well as the admissions in Czerny Milner's filings and the stipulations of the parties as to the relevant timeline."

4

remained in a dead docket status," while engaging in a lengthy examination of Milner's case history. After hearing argument from both parties, the trial court reviewed Milner's motion, applied the *Barker* analysis, and ultimately denied the motion.

1. Under Georgia law, when examining a defendant's claim that he was denied his constitutional right to a speedy trial,

> the trial court is required to decide as a threshold matter whether the delay at issue was long enough to create "presumptive prejudice." If the delay was not long enough to create presumptive prejudice, the speedy trial claim fails at the threshold. A delay long enough to be presumptively prejudicial triggers a requirement that the trial court analyze the speedy trial claim by balancing the conduct of the state and the defendant under four factors set forth in *Barker v. Wingo*: (1) whether the delay before trial was uncommonly long; (2) whether the state or the defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted the right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay.

(Citations and punctuation omitted). *Goffaux v. State*, 313 Ga. App. 428, 428-429 (721 SE2d 635) (2011). See also *Singleton v. State*, 317 Ga. App. 637, 638 (732 SE2d 312) (2012). "[N]o single factor is necessary or sufficient to sustain a speedy trial claim," as the factors are considered together in the balancing test of the conduct of

5

the prosecution and the defendant. See *Singleton*, 317 Ga. App. at 638; *Goffaux*, 313 Ga. App. at 429. We review the denial of a defendant's constitutional speedy trial claim for an abuse of discretion. *Higgins v. State*, 308 Ga. App. 257, 258 (707 SE2d 523) (2011).

As a threshold matter, it is clear the trial court correctly determined that the ten-year delay in this case was long enough to create "presumptive prejudice."[4] See *Goffaux*, 313 Ga. App. at 429 ("A delay approaching one year is generally deemed to be presumptively prejudicial."); *Hayes v. State*, 298 Ga. App. 338, 340 (1) (680 SE2d 182) (2009) ("this case long ago crossed the presumptive prejudice threshold"). The parties do not contend otherwise. As a result, we next proceed to the four *Barker* factors.

---

[4] Milner's claim that the trial court failed to properly calculate the length of the delay ("approximately ten years" as opposed to an actual delay of ten years, six months), while correct, presents a distinction without a meaningful difference. "Where a trial has not occurred, the delay should be calculated from the date of arrest or other formal accusation to the date on which a defendant's speedy trial motion was granted or denied." *State v. Porter*, 288 Ga. 524, 526 (2) (b) (705 SE2d 636) (2011). The trial court correctly identified and applied this principle and found the delay to be "approximately ten years." In fact, the delay is 127 months, calculated from Milner's arrest (May 26, 2002) to the trial court's order denying Milner's motion to dismiss (December 5, 2012). While it is often preferable to express the length of delay in terms of months, the trial court did not abuse its discretion and we will not further review Milner's argument on this point.

6

2. (a) *Whether the Delay was Uncommonly Long*. Milner contends that the trial court abused its discretion on this factor, apparently arguing that the ten-year delay was uncommonly long and that, *ipso facto*, this factor should have been weighed heavily against the State. We are not persuaded.

"A delay is considered uncommonly long under the test to the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (Citations omitted). *Higgins*, 308 Ga. App. at 260 (2) (a). In this case, although the trial court found that the ten-year delay was uncommonly long, it also found that "even this lengthy delay is not weighed *heavily* against the State."[5] (Emphasis in original.) The trial court then weighed this factor against the State, "but ultimately not heavily." The parties do not appear to contest the trial court's finding that the delay in this case is uncommonly long; rather, Milner argues that the delay should be weighed heavily against the State simply because of the length of the delay.

This argument fails because the idea of a bright-line rule is anathema to the analysis of speedy trial claims. See *Vermont v. Brillon*, 556 U. S. 81, 90-91 (II) (129

---

[5] Of note, there was no extended initial delay between Milner's arrest and his indictment. Milner's case was indicted approximately six months after his arrest and the arraignment was scheduled promptly thereafter. Compare *Singleton*, 317 Ga. App. at 638 (two-year delay in indictment); *Goffaux*, 313 Ga. App. at 428 (three-year delay in indictment).

7

SCt 1283, 173 LE2d 231) (2009); *Porter*, 288 Ga. at 533, n. 4 (citing the "flexible balancing test required by *Barker*"); *State v. Pickett*, 288 Ga. 674, 679, n.1 (706 SE2d 561) (2011) (bright-line rule "would be contrary to the case-by-case balancing required by *Barker*"); *State v. Brown*, 315 Ga. App. 544, 548-549 (726 SE2d 500) (2012) ("different weights should be assigned to different reasons" for a delay). Similarly, because the *Barker* factors are not talismanic and must be considered together, trial courts are required to "engage in a difficult and sensitive balancing process [that] necessarily compels them to approach speedy trial cases on an ad hoc basis." *Porter*, 288 Ga. at 526 (2) (a); *Pickett*, 288 Ga. at 675 (2) (a). Moreover, no one factor is sufficient to establish a speedy trial claim. See *Singleton*, 317 Ga. App. at 638. Finally, we have previously found that delays of similar length may be weighed against the State, but not heavily. See generally *Moore v. State*, 314 Ga. App. 219, 221 (2) (a) (723 SE2d 508) (2012) (84-month delay not considered by trial court, but trial court should have "weighed it against the [S]tate"). This ad hoc approach confirms that a trial court's discretion is substantial and that a bright-line rule tied solely to the length of the delay, similar to what Milner appears to propose, runs contrary to the *Barker* analysis. It follows that Milner has failed to demonstrate an abuse of the trial court's substantial discretion on this factor.

8

(b) *Responsibility for the Delay*. Milner next argues that, in view of the extensive delay, the trial court should have weighed this factor "more than benignly against the State." At the outset, the State offers that "the entire delay was properly laid at the feet of the State," while Milner likewise concedes that "there is no evidence of a deliberate intent" to delay Milner's case. Furthermore, the trial court found no such evidence. Accordingly, this factor turns upon the weight assigned by the trial court for responsibility of the delay.

"Where no reason appears for a delay, we must treat the delay as caused by the negligence of the State." (citation omitted). *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001). "Generally, delay attributed to the State's negligence, rather than a deliberate act, is weighed as a relatively benign factor against the State." (Citation and punctuation omitted). *Goddard v. State*, 315 Ga. App. 868, 872 (2) (b) (729 SE2d 397) (2012). See also *Goffaux*, 313 Ga. App. at 429. However, "[e]ven benign negligence will begin to weigh more heavily against the State, the longer the delay caused by the same." *Singleton*, 317 Ga. App. at 641.

Here, the trial court initially noted that no allegation had been made, and the evidence does not support, that the State "deliberately delayed [Milner's] trial in order to hamper his defense." Of particular import, the trial court found that Milner's case

9

was placed on an administrative dead docket on September 19, 2003 due to his failure to appear at his January 14, 2003 arraignment. Although the case was ostensibly removed from the administrative dead docket by the trial court's September 11, 2006 order, it was not until a December 5, 2011 status calendar that the trial court discovered the case inadvertently had remained on the dead docket. Indeed, the trial court noted that "this looks like somehow or other the clerk's office fell down because it remained in a dead docket status." The trial court, unable to determine the reason for the administrative error, attributed "the delay to government negligence and weigh[ed] [the delay] against the State but only lightly or benignly." Under these circumstances, the trial court did not abuse its discretion in weighing this factor against the State. See *Layman v. State*, 284 Ga. 83, 85 (663 SE2d 169) (2008); *Higgins*, 308 Ga. App. at 261 (2) (b); *Green v. State*, 295 Ga. App. 468, 469 (3) (672 SE2d 414) (2009).

(c) *Assertion of the Right to Speedy Trial.* Although Milner concedes that "there was a significant delay in his assertion of his right [to a speedy trial]," he claims that the trial court abused its discretion in failing to consider as mitigation the

time during which Milner was not represented by counsel and the State's delay in responding to his discovery requests.[6]

"[A] defendant may assert his constitutional right to a speedy trial at any time after he is arrested." *Pickett*, 288 Ga. at 676 (2) (c) (3). "However, once his constitutional right accrues, the defendant has the responsibility to assert it, and delay in doing so normally will be weighed against him." Id. See also *Singleton*, 317 Ga. App. at 642 (2) (c) ("when a defendant waits until years after his arrest to assert his right to a speedy trial, the failure of the accused to assert his right sooner ordinarily will weigh against him heavily.") (punctuation omitted). Indeed, "delay often does work to a defendant's advantage." *Layman*, 284 Ga. at 85. Accordingly, the relevant inquiry on this factor is whether the accused asserted the right "in due course." *State v. Reimers*, 310 Ga. App. 887, 889 (2) (c) (714 SE2d 417) (2011). The "timing, form, and vigor of the accused's demands to be tried immediately" must be considered in

_____

[6] Placement of this case on the administrative dead docket was the result of Milner's failure to appear for his original arraignment rather than by an affirmative request by the State to refrain from prosecution. Compare *State v. Redding*, 274 Ga. 831 (561 SE2d 79) (2002); *Hayes*, 298 Ga. App. at 346 (2) (c). Furthermore, because Milner's case was ostensibly removed from the dead docket by the trial court's September 11, 2006 order, and because the parties believed the case had been removed from the dead docket as evidenced by the parties' subsequent filings, this time may still be counted against Milner. Compare *Harris v. State*, 284 Ga. 455, 456, n. 9 (667 SE2d 361) (2008).

11

determining the weight given to the assertion-of-the-right factor. *Porter*, 288 Ga. at 528 (2) (c) (3). In that regard, delays of 19 months and longer have been weighed heavily against criminal defendants. See *Brown v. State*, 287 Ga. 892, 895-896 (700 SE2d 407) (2010) (two- and three-year delays in asserting right weighed heavily against defendants); *Layman*, 284 Ga. at 86 (four-year delay in asserting right weighed heavily against defendant); *Jackson v. State*, 279 Ga. 449, 453 (3) (614 SE2d 781) (2005) (19-month delay in asserting right weighed against defendant). See also *Pickett*, 288 Ga. at 677 (2) (c) (3) ("A delay of over five years typically would warrant this factor being weighed *heavily* against the defendant.") (emphasis in original).

The trial court found that Milner did not assert his constitutional right to a speedy trial until May 7, 2012 - "ten years after [Milner's] arrest, and on the eve of trial in 2012." Further concluding that Milner did not assert his right "in due course," the trial court weighed this factor heavily against Milner.

It is true that a trial court may sometimes consider certain factors in mitigation of the failure to demand a speedy trial, including "the fact that the accused was insisting . . . that the State comply with its obligations to furnish discovery." *Brown*, 315 Ga. App. at 552 (2) (c). See also *Richardson v. State*, 318 Ga. App. 155, 161 (2) (c) (733 SE2d 444) (2012); *State v. Shirley*, 311 Ga. App. 141, 146 (3) (c) (714 SE2d

12

636) (2011). Here, it does not appear that the trial court addressed the mitigation of Milner's delay in its written order. Nevertheless, the record does not support Milner's argument. Milner, through retained counsel, requested discovery from the State on September 18, 2006. The State responded to Milner's discovery request on September 27, 2006 and, on the same date, demanded discovery from Milner; the record does not contain discovery responses by Milner. Following Milner's counsel's withdrawal 52 months later on January 17, 2012,[7] the trial court appointed counsel for Milner and Milner entered a plea of not guilty. Appointed counsel requested discovery from the State on January 23, 2012, to which the State filed a supplemental response on April 25, 2012. Milner filed a motion to compel discovery on April 26, 2012. The State notified Milner's appointed counsel of additional evidence on May 1, 2012, although the record does not contain Milner's response, if any.[8] In addition, Milner's appointed counsel's discovery requests mirrored the initial discovery requests to which the State

[7] During this extended period, the record does not reveal any effort by counsel to insist "that the State comply with its obligations to furnish discovery." *Brown*, 315 Ga. App. at 552 (2) (c). This case is therefore dissimilar to *Brown*, *Richardson*, *Shirley*, supra, and related cases in which there had been a refusal by the State to provide discovery in spite of the ongoing efforts of defendants to enforce compliance with discovery requirements.

[8] At the May 10, 2012, hearing, Milner's counsel acknowledged that she had seen the additional discovery from the State.

previously responded. See *Howard v. State*, 307 Ga. App. 822, 826 (2) (b) (706 SE2d 163) (2011). Finally, Milner filed his motion to dismiss the indictment on May 7, 2012 - one day prior to a May 8, 2012 trial date.

To the extent the trial court did not consider the possibility of mitigation, it erred; however, based on this evidence from the record, we conclude that the trial court "would have had no discretion to reach a different judgment" had it considered mitigation. *Pickett*, 288 Ga. at 679 (2) (c) (4). See also *Moore*, 314 Ga. App. at 221 (2) (a); *Williams v. State*, 300 Ga. App. 797, 798 (c) (686 SE2d 407) (2009) ("we find no connection between the State's failure to respond to her discovery and her failure to assert her rights"), aff'd, 290 Ga. 24, 27 (3) (717 SE2d 640) (2011). This is particularly true in view of Milner's lengthy delay in asserting his right to a speedy trial, addressed supra. Similarly, Milner's contention that he failed to assert his constitutional right to a speedy trial due to the inaction of retained counsel is unsupported by any citation of authority and is likewise unavailing.[9] See *Vermont*,

---

[9] While Milner asserts that his initial failure to demand a speedy trial should be viewed less harshly, "the discretion to mitigate the weight given this factor" applies only when the defendant is out on bond and unrepresented by counsel "during the period between arrest and indictment." *Pickett*, 288 Ga. at 676 (2) (c) (3). That is not the case here. Moreover, Milner's subsequent failure to demand a speedy trial for the ensuing 78 months - the final 71 of which he was represented by counsel - cannot be ignored. See *Pickett*, 288 Ga. at 677 (2) (c) (3).

14

556 U. S. at 90-91 (II) ("Because the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant.") (citation and punctuation omitted); *Payne v. State*, 289 Ga. 691, 694 (2) (b) (715 SE2d 104) (2011); *Howard*, 307 Ga. App. at 826 (2) (b) ("the reality [is] that defendants may have incentives to employ delay as a defense tactic"). Accordingly, the trial court did not abuse its discretion in weighing this factor heavily against Milner. See *Pickett*, 288 Ga. at 677 (2) (c) (3); *Higgins*, 308 Ga. App. at 261 (2) (c); *Howard*, 307 Ga. App. at 827-828.

(d) *Prejudice Resulting from the Delay*. Milner contends the trial court abused its discretion in holding that Milner had not demonstrated actual prejudice in view of his anxiety over the pending case and his decreased memory.

Under the *Barker* analysis, the kinds of prejudice that a defendant may suffer from an unreasonable delay are "[i] oppressive pretrial incarceration, [ii] anxiety and concern of the accused, and [iii] the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Singleton*, 317 Ga. App. at 643 (2) (d) (citing *Pickett*, 288 Ga. at 677 (2) (c) (4)). The third form of prejudice is the most serious, "because the inability of a defendant adequately to

15

prepare his case skews the fairness of the entire system." Id. Because of the difficulty of proving specific prejudice due to the passage of time alone,

> excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

Id.

As a threshold matter, the trial court noted that Milner failed to prove that he was "subjected to any oppressive pretrial incarceration or that he suffered an unusual anxiety or concern beyond that which necessarily attends being under indictment." After citing its own interaction with Milner during which it engaged in a colloquy with Milner, the trial court observed that Milner "was able to respond cogently and in detail." As a result, the trial court concluded that Milner had not suffered "any actual prejudice from the passage of time." Furthermore, the trial court acknowledged that the ten-year delay raised a presumption of prejudice, but concluded that the presumption was outweighed by the absence of demonstrable prejudice and by Milner's failure to assert his constitutional right.

Milner does not appear to contest that the trial court correctly concluded that he showed no oppressive pretrial incarceration; indeed, Milner was released on bail 17 days following his arrest. As a result, the trial court did not abuse its discretion on this point.

However, Milner cites his anxiety due to the delay as a mitigating factor. Milner's argument appears to be based chiefly on his loss of disability benefits due to the pending indictment. But aside from his December 13, 2005 change of address with the clerk's office, the record is devoid of any effort by Milner to contact the State, the trial court, or his attorney concerning the status of his case. See *Goddard*, 315 Ga. App. at 873 (2) (b). Furthermore, once Milner received notice of the cessation of his benefits on or about November 1, 2005, it was not until May 7, 2012 that he raised the speedy trial claim in his motion to dismiss the indictment - a period of 78 months. Importantly, Milner was represented by counsel for 71 of those months. Because Milner "chose not to alleviate his anxiety and concern by filing a speedy trial demand," the trial court did not abuse its discretion by weighing this factor against Milner. See *Green*, 295 Ga. App. at 471 (6). See also *Lambert v. State*, 302 Ga. App. 573, 577 (4) (692 SE2d 15) (2010); *Higgins*, 308 Ga. App. at 262 (2) (d); *Howard*, 307 Ga. App. at 828 (2) (d).

17

Nor is Milner's reference to his memory availing. During the hearing on his motion to dismiss the indictment, Milner agreed only that his memory was "diminished" and that his medication "affected" his memory. However, the only example Milner presented of his memory being impaired was that he did not recognize the victim in a prior court appearance. In contrast, the trial court engaged in a colloquy with Milner, during which Milner was able to recall his prior addresses (including the address where the incident occurred), the circumstances of his arrest, and his subsequent release.[10] The trial court observed that Milner "was able to respond cogently and in detail" and therefore concluded that there was no prejudice to Milner based upon his allegedly diminished memory. Because Milner was required to show "specific evidence of how the delay impaired his ability to defend himself," *Higgins*, 308 Ga. App. at 262 (2) (d), there is no abuse of discretion. See also *Lambert*, 302 Ga. App. at 576 (4); *Goffaux*, 313 Ga. App. at 431; *Billingslea v. State*, 311 Ga. App. 490, 493 (2) (716 SE2d 555) (2011).

---

[10] Although no hearing had been held by the trial court to evaluate its admissibility, it is likewise telling that in the incident report following Milner's arrest, in which he gave a Mirandized statement, Milner claimed not to remember what he said to the victim that accelerated the incident to its conclusion.

18

Finally, the trial court noted that no prejudice to Milner's defense had been shown because no alibi defense had been articulated and no allegation had been made that necessary witnesses were no longer available. Once again, this conclusion was not an abuse of discretion. See *Billingslea*, 311 Ga. App. at 493 (2); *Higgins*, 308 Ga. App. at 262-263 (2) (d).

(e) *Balancing the Barker Factors.* Milner contends, without citation to authority, that the trial court failed to properly balance the *Barker* factors. The record reveals that the trial court struggled at length with Milner's motion and with the proper balancing of the *Barker* factors, noting that it was "very concerned obviously about the time that has passed." Ultimately, the trial court weighed the first *Barker* factor - the length of the delay - benignly against the State. The second factor, the reason for the delay, was again weighed against the State "slightly." Third, the trial court weighed assertion of the right to a speedy trial heavily against Milner. Fourth, the trial court found an absence of prejudice. "After balancing all of these factors," the trial court concluded that Milner had not been denied his constitutional right to a speedy trial.

In sum, "[t]he balancing undertaken by the trial court was reasoned and reasonable . . . and for that reason, we cannot say that it amounts to an abuse of

discretion." *State v. Buckner*, 292 Ga. 390, 399 (738 SE2d 65) (2013). See also

*Higgins*, 308 Ga. App. at 263 (2) (e); *Lambert*, 302 Ga. App. at 578; *Green*, 295 Ga.

App. at 471 (6). We are mindful of, and do not condone, the length of the delay in this

case. See *Layman*, 284 Ga. at 87; *Howard*, 307 Ga. App. at 829 (e). However, "no

one [*Barker*] factor is either necessary or sufficient to sustain a speedy trial claim."

*Jenkins v. State*, 294 Ga. 506, 510 (2) (755 SE2d 138) (2014). And as our Supreme

Court has noted,

> [t]here are some things about which reasonable people can reasonably
> disagree, and under settled Georgia law, when reasonable people could
> reasonably disagree about the weighing and balancing of the [*Barker*]
> factors, we must defer to the judgment of the trial court. This is such a
> case.

*Buckner*, 292 Ga. at 399. Under the unique circumstances of this case, we cannot

conclude that the trial court abused its substantial discretion.

*Judgment affirmed. Ray, J., concurs. McFadden, J., concurs specially.*

A14A1224. MILNER v. THE STATE.

McFADDEN, Judge, concurring specially.

I concur in the judgment affirming the trial court's denial of Milner's speedy trial motion, but I write separately because I do not agree with all that is said in the opinion.

This case involves an extraordinarily long delay of over ten years. In *Doggett v. United States*, 505 U. S. 647 (112 SCt 2686, 120 LEd2d 520) (1992), the Supreme Court of the United States described the significance of a similarly extraordinary delay (eight and one half years) to the *Barker* speedy trial analysis. As explained in *Doggett*,

> excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay.

*Doggett*, 505 U. S. at 655-656 (III) (A) (citation omitted)."[O]ur tolerance of [the state's] negligence [in bringing an accused to trial] varies inversely with its protractedness[.]" Id. at 657 (III) (B) (citation omitted). And "the presumption that pretrial delay has prejudiced the accused intensifies over time." Id. at 652 (II). Nevertheless, that presumption of prejudice can be "extenuated, as by the defendant's

acquiescence, [or] persuasively rebutted[.]" Id. at 658 (III) (B) (citation and footnotes omitted).

Accordingly, the extraordinary length of delay in this case plays a role in the analysis of all of the *Barker* factors. See *Hayes v. State*, 293 Ga. App. 338, 341 (2) (a) (680 SE2d 182) (2009) ("the weight accorded the other factors in the balancing test depends, to a large degree, on the length of the delay") (citing *Doggett*, supra; other citations omitted). Most obviously, it figures into the degree to which the length of delay is weighed against the state. But the ten-year delay also figures into the tolerance given to the state's negligence in bringing Milner to trial; the degree to which Milner's delay in asserting his right to trial (which was also extraordinarily long) mitigates the prejudice presumed from the ten-year delay; and the amount of prejudice that can be presumed despite Milner's inability to show actual prejudice.

Keeping in mind these implications of the ten-year delay in this case, I find no error in the trial court's denial of the motion for speedy trial. The trial court's order reflects a correct analysis of the *Barker* factors and an appropriate exercise of discretion in balancing those factors. See generally *State v. Porter*, 288 Ga. 524, 526 (2) (a) 705 SE2d 636) (2011) (describing nature of trial court's role in balancing *Barker* factors). The order makes clear that the trial court properly considered the

2

implications of the ten-year delay when he engaged in the balancing process, consistent with the principles explained in *Doggett*, supra.

Because this case can be resolved in the manner described above, I see no need for the majority opinion's extensive analysis about the propriety of a bright-line rule. In addition, I disagree with the majority's application of the standard of appellate review set forth in *State v. Pickett*, 288 Ga. 674 (706 SE2d 561) (2011), within its review of the trial court's treatment of one of the *Barker* factors; that standard of appellate review is more properly applied to the balancing of *all* of the *Barker* factors. See id. at 679-680 (2) (d).