**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 11, 2016**

# In the Court of Appeals of Georgia

A16A0880. TAYLOR v. THE STATE.

BOGGS, Judge.

In the third appearance of this case before this court,[1] Harry Taylor appeals from his convictions of 6 counts of aggravated child molestation, 11 counts of child molestation, 11 counts of sexual exploitation of children, 1 count each of aggravated sexual battery, sexual battery, and criminal attempt, involving 15 minor victims. He contends that the trial court erred in (1) its balancing of the speedy trial factors required by *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972) and

---

[1] In *Taylor v. State*, 321 Ga. App. 736 (738 SE2d 347) (2013) ("*Taylor I*"), we dismissed Taylor's attempt to directly appeal the trial court's order denying his pre-trial plea in bar based upon an alleged violation of his constitutional right to a speedy trial. In Case No. A15A1305 ("*Taylor II*"), an unpublished opinion, we remanded this case to the trial court for reconsideration based upon errors and deficiencies in its order denying Taylor's plea in bar.

*Doggett v. United States*, 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992); and

(2) denying his motion to suppress based upon deficiencies in the search warrant

issued for his home. For the reasons explained below, we affirm.

1. Taylor contends that the trial court abused its discretion in its second ruling

on the speedy trial issue in: (a) weighing the length of the delay lightly against the

State; (b) weighing the reason for the delay benignly against the State; (c) weighing

the assertion of his right to a speedy trial heavily against him; (d) weighing the

prejudice factor heavily against him; and (e) balancing of the four factors to conclude

that no speedy trial violation occurred.

Application of the *Barker-Doggett* factors

to the circumstances of a particular case is a task committed principally
to the discretion of the trial courts, and it is settled law that our role as
a court of review is a limited one. Under our precedents, we must accept
the factual findings of the trial court unless they are clearly erroneous,
and we must accept the ultimate conclusion of the trial court unless it
amounts to an abuse of discretion, even though we might have reached
a different conclusion were the issue committed to our discretion.

(Citations and punctuation omitted.) *State v. Alexander*, 295 Ga. 154, 155-156 (758

SE2d 289) (2014). Based upon this deferential standard of review, we find no merit

in Taylor's argument that the trial court should have granted his plea in bar.

2

In *Taylor II*, we summarized the relevant facts concerning Taylor's speedy trial claim as follows:

The record reflects that Taylor was [first] arrested on July 24, 2008. He was first indicted on October 15, 2008; however, due to what the State admitted were errors in the first indictment, Taylor was reindicted on January 7, 2009. And discovery in his case ensued from October 31, 2008, to August 2, 2010.

On January 30, 2009, Taylor filed, among numerous other motions, a motion to suppress, which he later amended and recast on August 12, 2010. The judge first assigned to handle Taylor's case held hearings on this motion on August 16, 18, and 30, 2010, but did not immediately issue a decision. Additionally, in October 2009, Taylor consented to a continuance due to the still ongoing discovery, and he alleged that the State's compliance was deficient as to 19 different items. Thereafter, Taylor consented to three more continuances.

In February 2010, Taylor consented to a continuance to allow for specially set motions proceedings and due to his divorce trial. Two months later, in April 2010, Taylor consented to a continuance again because both he and the State believed the case would require one to two days to hear all pretrial motions and that the trial itself would last longer than one week. And in February 2011, Taylor consented to a continuance due to the continued unavailability of a sufficiently long trial calendar and because he was still awaiting a ruling on his motion

3

to suppress. Finally, on December 16, 2011, the first-assigned judge denied Taylor's [amended and recast] motion to suppress evidence.

When Taylor received, via e-mail, the court's order denying his motion to suppress, he learned the identity of the judge's staff attorney and recognized that she was a former assistant district attorney who had previously been employed with the Gwinnett County District Attorney's office and had some involvement in his case. Therefore, on December 20, 2011, Taylor filed a motion to recuse the judge. This motion was granted on February 17, 2012. Then, on February 2[2], 2012, the second-assigned judge voluntarily recused without explanation in accordance with Uniform Superior Court Rule 25.7, as did the third-assigned judge on February 27, 2012.

On February 27, 2012, Taylor filed a motion for a *de novo* hearing and review of his previously denied motion to suppress. And on March 12, 2012, the fourth-assigned judge voluntarily recused without explanation. On March 15, 2012, the fifth-assigned judge set a hearing on Taylor's February 27, 2012 motion for April 5, 2012. But then, after the hearing, on April 6, 2012, the [fifth]-assigned judge recused at the State's request after realizing a potential conflict of interest.

On April 18, 2012, the [sixth]-assigned judge set the case down for a May 29 status hearing and for trial on August 6, 2012. After denying a motion to recuse the [sixth]-assigned judge, on June 15, 2012, that judge granted Taylor's request for a *de novo* hearing on his amended and recast motion to suppress and scheduled same for July 10,

4

2012. Thereafter, on July 27, 2012, the [sixth]-assigned judge denied Taylor's recast and amended motion to suppress.

On July 26, 2012, Taylor for the first time asserted his right to a speedy trial when he filed a plea in bar and/or motion to dismiss, alleging that his Sixth Amendment right to a speedy trial had been violated. Following a hearing on September [6], 2012, Taylor's motion was denied on September 26, 2012 by a [seventh]-assigned judge. On October 16, 2012, Taylor filed a direct appeal to this denial, but in light of the Supreme Court of Georgia's decision in *Sosniak v. State*,[292 Ga. 35, 40 (2) (734 SE2d 362) (2012), his appeal was dismissed on February 14, 2013.

Following the case's return to the trial court, Taylor filed, on November 21, 2013, a second amended motion to suppress, raising new arguments as to why the evidence against him should be suppressed. This motion was denied on April 28, 2014. Thereafter, Taylor waived his right to a trial by jury and, following a [] bench trial [based upon stipulated facts and admitted photographs], was adjudicated guilty of the offenses set forth *supra*.

(Footnotes omitted.) *Taylor II*, slip opinion at 2-5. In *Taylor II*, this court issued a 26-page unpublished opinion in which we exhaustively considered the trial court's rulings on each of the *Barker* factors and remanded the case to the trial court "to exercise its discretion again using properly supported factual findings and the correct

5

legal analysis." (Punctuation and footnote omitted.) Id. at 25. In a 14-page order, the trial court diligently and faithfully addressed each of the deficiencies outlined by this court in *Taylor II*.

Having outlined the procedural history of this case, we now examine the trial court's analysis of each of the *Barker* factors.

(a) *Length of Delay*. In *Taylor II*, we instructed the trial court to

assess whether the delay in Taylor's case was uncommonly long and/or excessive, keeping in mind that a delay is considered uncommonly long under the test to the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. The court must then consider the weight of this factor.

(Citations, punctuation and footnotes omitted.) Slip opinion at 11. The trial court concluded "that the delay in this case was uncommonly long and weigh[ed] this factor against the state." It then exercised its discretion to "weigh[] this factor lightly against the state given the amount of information to be searched on Taylor's computers, the number of child victims, and the number of counts charged."

As the trial court recognized, the length of "delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case." (Citations omitted.) *State v. Buckner*, 292 Ga. 390, 393 (3) (a)

6

(738 SE2d 65) (2013). And there is no bright-line rule that all uncommonly long delays must be weighed heavily against the State. *Milner v. State*, 329 Ga. App. 654, 658 (2) (765 SE2d 790) (2014) (physical precedent only). See also *Stewart v. State*, 310 Ga. App. 551, 553-554 (2) (a) (713 SE2d 708) (2011) (trial court did not abuse discretion by declining to weigh four and a half year long delay heavily against State). As this case involved a 32-count indictment with 15 child victims and voluminous computerized information, we cannot conclude that the trial court abused its discretion by weighing the length of the delay lightly against the State.

(b) *Reason for Delay.* Another reason for our remand of this case back to the trial court related to its analysis of the reason for the delay in trying Taylor. *Taylor II*, slip opinion at 12-16. We stated:

> Thus, although the trial court made some findings of fact as to the reasons for the delay, it ignored others. The court also failed to conclude whether this factor weighed against either the State or Taylor, or, in the alternative, was neutral as against both sides.

> The trial court's analysis mentions the five months between Taylor's arrest and re-indictment, but it does not weigh this period against the State or Taylor. Then, the trial court purports to weigh the entire fifteen-and-one-half month delay to obtain a ruling on Taylor's motion to suppress against the State before vaguely stating that Taylor

7

"is not blameless for the delay," apparently holding Taylor responsible for continuances and pretrial motions. The trial court then summarily weighs the fact that Taylor consented to continuances for approximately one year against him, but then fails to assess the reasons for these continuances before doing so. Additionally, though the trial court finds that some of the delay was due to the negligence of the State, it does not specify what amounted to negligence or the amount of weight this conclusion receives. Finally, the trial court fails to indicate whether it considered the delay between the initial denial of Taylor's motion to suppress by the first-assigned judge and the denial of his plea in bar/motion to dismiss—a period that accounts for approximately nine months of the fifty-month delay.

Given the scant findings of fact in support of the trial court's decision, we are constrained to remand so that the court can reconsider the circumstances giving rise to the delay and reassess the causes for the delay with regard to the principles outlined *supra* before reweighing this factor.

(Footnotes omitted.) Slip opinion at 14.

Upon remand, the trial court separately analyzed and weighed the following periods of delay: the five months between arrest and re-indictment; the 15-month delay for a ruling on Taylor's motion to suppress; delays from continuances and the role incomplete discovery played in the continuance requests; and delays from

8

multiple motions to recuse; delay from a second motion to suppress; and delay from a change in defense counsel. It then concluded that the portions of the delay attributed to the State weighed benignly against the State and that the portions of the delay attributed to Taylor should also be weighed benignly.

Taylor contends the trial court erred by failing to weigh the reason for the delay in this case heavily against the State. It is true, as Taylor asserts, that "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice goes. Thus, our toleration of such negligence varies inversely with its protractedness." (Citation, punctuation and footnote omitted.) *Grizzard v. State*, 301 Ga. App. 613, 615-616 (2) (b) (688 SE2d 402) (2009). For example, in *Grizzard*, we held

> if ever there were a case in which the assigned to official negligence should be compounded, this is the case. . . . [T]he eight-year delay here – even if reduced by one year to account for Grizzard's successful appeal – mandated that the trial court should have compounded the weight and weighed this factor *heavily* against the State, not merely benignly.

(Emphasis in original.) Id. at 616 (2) (b). In that case, eight years elapsed before the defendant was brought to trial, and for six of those eight years, there was a complete

9

absence of any activity on the part of the State. In contrast, the longest period of complete inactivity on Taylor's case was approximately one year. And in numerous other cases, we have concluded that a trial court did not abuse its discretion by weighing a lengthy delay caused by the State's negligence lightly or benignly against the State. See *Milner*, supra, 329 Ga. App. at 658-659 (2) (b) (no abuse of discretion in weighing ten-year delay benignly against State); *Moore v. State*, 314 Ga. App. 219, 221-222 (2) (b) (723 SE2d 508) (2012) (no abuse of discretion in weighing benignly against State an 84-month delay caused by its negligence); *Stewart v. State*, supra, 310 Ga. App. at 555-556 (2) (b) (713 SE2d 708) (2011) (trial court did not abuse discretion by failing to weigh heavily against the State a five-year delay largely attributable to the State's negligence).

Based upon the unusual facts and circumstances of this case and, in particular, the necessity for sophisticated software to conduct a forensic examination of Taylor's computers and the necessity for five trial judges to recuse, the trial court did not abuse its discretion by failing to weigh this factor heavily against the State. See id.

(c) *Assertion of Speedy Trial Right*. In *Taylor II*, we concluded that the trial court did not abuse its discretion "by weighing this factor against Taylor when the record demonstrates that the State was responsive to and ultimately compliant with

Taylor's discovery requests." (Footnote omitted.) Slip opinion at 19. We remanded, however, for the trial court to clarify whether it "simply weighed this factor against Taylor or *heavily* weighed it against him." Id. at 20. The trial court subsequently clarified that it weighed this factor heavily against Taylor and declined to exercise its discretion to mitigate the weight based upon the length of time it took the State to respond to Taylor's discovery requests.

We find no merit in Taylor's assertion in this appeal that the trial court was *required* to mitigate the weight of this factor. The Supreme Court of Georgia has "acknowledged that the weight to be attributed to this factor may be mitigated in some cases, and whether the circumstances of a particular case warrant any mitigation is a question committed to the sound discretion of the trial court. [Cits.]" *Buckner*, supra, 292 Ga. at 397-398 (3) (c). Here, the record shows that Taylor received all of the State's discovery by August 2010, but did not demand a speedy trial until July 2012, almost two years later. Under these circumstances, the trial court was authorized to find Taylor's claim that his failure to file a speedy trial demand should be mitigated by the State's delay in providing discovery "unavailing." See *Williams v. State*, 290 Ga. 24, 27 (3) (717 SE2d 640) (2011) (affirming trial court's decision to weigh this factor heavily against the defendant even though defendant contended

11

he could not have asserted right sooner because discovery was incomplete); *Williams v. State*, 300 Ga. App. 797, 798 (c) (686 SE2d 407) (2009) (trial court authorized to conclude no connection between State's failure to comply with discovery requests and defendant's late assertion of right to speedy trial).

(d) *Prejudice*. In *Taylor II*, we affirmed the following conclusions of the trial court with regard to the prejudice factor: Taylor suffered oppressive pretrial incarceration; he did not suffer undue concern or anxiety; and his defense was not impaired by the delay. Slip opinion at 20-24. We remanded, however, for the trial court "to ultimately determine whether Taylor suffered prejudice and weigh this factor as a whole." Id. at 24. The trial court complied with this direction by stating in its second order:

> there is no evidence of any prejudice to Taylor beyond the oppressive pre-trial incarceration. While that first sub-factor weigh[]s against the State, the other two sub-factors must weigh[] against Taylor. When combining the three sub-factors[,] this court holds that the pretrial incarceration, while oppressive, does not carry the day for Taylor. . . . [T]he incarceration did not affect Taylor's ability to communicate with his lawyer, did not prevent him from reviewing the case file, did not prevent him from completing his paralegal course, and did not result in the loss of any evidence, therefore the first factor must weigh lightly against the State. The second sub-factor, since there is no evidence that

12

Taylor experienced [] undue anxiety or concern as a result of his incarceration[,] this factor must weigh heavily against Taylor. Finally, in the third sub-factor, Taylor has presented no evidence to support any conclusion that his case has been impaired by the delay, thus, this factor must weigh heavily against Taylor. . . . Based upon the foregoing, the prejudice factor must weigh heavily against Taylor.

(Citations, punctuation and footnote omitted.)

In this appeal, Taylor contends that this trial court abused its discretion by failing to weigh this factor heavily against the State. We disagree. It is well-established that of the three factors considered when determining prejudice to the defendant, harm to the accused's defense is the most serious and important. See *Brewington v. State*, 288 Ga. 520, 524 (3) (b) (iv) (705 SE2d 660) (2011); *Weis v. State*, 287 Ga. 46, 55 (1) (d) (694 SE2d 350) (2010). And while Taylor was placed in solitary confinement,[2] there is no evidence that he was exposed to substandard conditions while incarcerated, such as a lack of adequate food, climate control, proper medical care, or cleanliness. See *Weis*, supra, (noting substandard conditions as

---

[2] Taylor testified that he was allowed leave his solitary jail cell approximately three times a day for about an hour each time and go into a day room and an enclosed recreation yard. During this free time, he was allowed to take showers, shave, talk to other people, buy food from the commissary store, and make telephone calls.

13

means of proving oppressive pretrial incarceration); *State v. Ariegwe*, 338 Mont. 442, 478-479 (I) (C) (4) (i) (167 P3d 815) (2007) (providing definition of substandard conditions for speedy trial analysis). And as recognized by our Supreme Court, oppressive pretrial detention, standing alone does not require "an automatic inference of enough prejudice to balance that factor in a defendant's favor without proof of substandard conditions or other oppressive factors beyond those that necessarily attend imprisonment." (Citations and punctuation omitted.) *Boseman v. State*, 263 Ga. 730, 733 (1) (d) (438 SE2d 626) (1994), overruled on other grounds, *Sosniak*, supra, 292 Ga. at 40 (2). Similarly, solitary confinement does not mandate a finding that the prejudice prong of the speedy trial analysis be weighed heavily against the State. Cf. *Wilson v. State*, 148 Md. App. 601, 638-639 (II) (814 A2d 1) (2002). Accordingly, we conclude that the trial court did not abuse its discretion with regard to the prejudice factor. See *Hall v. State*, 240 Ga. App. 356, 358 (3) (d) (523 SE2d 409) (1999).

(e) *Balancing the Factors*.

At the conclusion of its detailed order, the trial court carefully and thoroughly balanced the *Barker* factors and explained its reasons for concluding that Taylor's right to a speedy trial had not been violated:

14

When combining the weight given to each factor, this court holds the first prong, (1) presumptive prejudice, required the court to balance the remaining *Barker* factors, (2) the length of the delay, based upon Georgia precedent this court is constrained to weigh this prong against the State, however, this court weighs this prong lightly or benignly against the State for the reasons stated, *supra*, (3) the reason for the delay, this court holds that both the State and Taylor were partly responsible for portions of the delay in this case, for the reasons stated, *supra*, this court weighs this prong lightly or benignly against the State and Taylor for their respective roles in the delay, (4) prior assertion of the right to a speedy trial, this court weighs heavily against Taylor. Taylor's argument that he could not assert his right to a speedy trial because of delayed discovery is unavailing to this court and, thus, this factor weighs heavily against Taylor, (5) prejudice to the defendant, despite what the court feels was oppressive pre-trial incarceration, this court holds that there is no evidence that Taylor suffered any undue anxiety or concern, or that Taylor's case was prejudiced by the delay or the incarceration, thus, this court weighs this factor heavily against Taylor.

When weighing all of the factors together, this court concludes that Taylor has failed to satisfy the *Barker - Doggett* test and hereby **DENIES** Taylor's plea in bar and demand for discharge and acquittal.

While we recognize that this was a case involving lengthy solitary confinement before trial, "we must be mindful that no one factor is sufficient to sustain a speedy

15

trial claim" and that the trial court is "required to engage in a difficult and sensitive balancing process of all four factors." (Citations and punctuation omitted.) *Franklin v. State*, 305 Ga. App. 354, 362 (1) (e) (699 SE2d 575) (2010). Based upon the complexity of the multi-count indictment involving 15 separate victims, Taylor's failure to timely assert his right to a speedy trial, and the lack of any actual prejudice to his defense, we cannot say that the trial court's ultimate conclusion amounts to an abuse of discretion. See *Jenkins v. State*, 294 Ga. 506, 513 (2) (c) (755 SE2d 138) (2014); *Boseman*, supra, 263 Ga. at 734 (1) (e). Additionally, to the extent it could be concluded that the trial court failed to expressly consider presumed prejudice when balancing and weighing the factors, we conclude that a second remand would serve no purpose because even taking into account the presumed prejudice, the trial court "would have had no discretion to reach a different judgment. [Cits.]" *Ward v. State*, 325 Ga. App. 890, 894 (2) (e) (756 SE2d 21) (2014). See also *Phan v. State*, 290 Ga. 588, 596 (1) (e) (723 SE2d 876) (2012); *Leopold v. State*, 333 Ga. App. 777, 784 (1) (e) (777 SE2d 254) (2015).

2. Taylor asserts that the trial court erred by denying his motion to suppress for two reasons: (a) the affidavit submitted with the application for a search warrant of his home failed to establish that Taylor resided at the address to be searched; and (b)

16

the affidavit failed establish that evidence of child molestation and sexual battery would be on the computers, cameras, and electronic storage devices listed on the warrant. We disagree.

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants. A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court. The test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the "factual and practical considerations of everyday life on which reasonable and prudent men act." Moreover, even doubtful cases should be resolved in favor of upholding a warrant.

(Citations and punctuation omitted.) *State v. Hunter*, 282 Ga. 278 (646 SE2d 465) (2007).

(a) Taylor's argument with regard to the affidavit's failure to establish that he resided at the address listed as the location to be searched overlooks the fact that the

17

detective in this case submitted a combined "AFFIDAVIT AND APPLICATION FOR A SEARCH WARRANT," the entirety of which was under oath, as well as an "Attachment A," which was also under oath. In our view, the trial court correctly concluded "that a sufficient nexus, or connection, between the items sought and the place to be searched, existed so as to support a conclusion of probable cause for issuance of the search warrant for the residence." As the trial court explained:

> The supporting affidavit and application for search warrant here are combined into one document and specific facts, as provided by victim's statements, connecting this Defendant to the crimes of Child Molestation, and/or Sexual Battery committed at Defendant's residence are detailed in "Attachment A," expressly incorporated into the affidavit and application by reference. The affiant avers in "Attachment A" that, based on the recited facts, probable cause exists to "believe that a crime has been committed and that there may be evidence to support such crimes at *said location*."
>
> Page 2 of the affidavit and application provides that "the facts establishing probable cause in searching for and seizing the foregoing specifically described person(s), property, items, articles, instruments connected with the foregoing crime(s) at the location described herein are: SEE ATTACHMENT 'A.'"
>
> This express language is immediately followed by the physical address and description of the location.

(Emphasis supplied.)

Although our research revealed no Georgia case addressing a similar alleged deficiency in a warrant application, other jurisdictions have applied a common-sense approach to resolving the issue when the affidavit fails to state explicitly that an address to be searched is the residence of the suspect. See *State v. Trujillo*, 150 N.M. 721, 720-728 (I) (266 P3d 1) (2011); *United States v. Hunter*, 86 F3d 679, 681-682 (7th Cir. 1996). These courts have concluded that when the affidavit describes only one place connected to the suspect, such as a residence, and lists a specific address to be searched, a connection between the address described where evidence can be found and the probable cause outlined in the affidavit "is the only logical conclusion supported by a common-sense reading of the affidavit." *Trujillo*, 150 N. M. at 726, citing *Hunter*, supra, 86 F3d at 682. We find the following reasoning by the New Mexico Supreme Court persuasive:

> Barring a hypertechnical reading of the affidavit, an inference that the residence described is the same as the residence where evidence can be found, is much more reasonable than its opposite—that the residence described in such painstaking detail actually has no relationship to the events of this case. We think the reviewing judge was well within his rights to draw the rational inference and avoid the irrational. Understandably, the reviewing judge was concerned that "there was no

19

indication in the affidavit that Defendant lived at this address, that he was presently at that address or had been at that address sometime in the past." However, considered in context, what else could the detective have intended to say? More significant still, what other inference could the issuing judge reasonably have come to?

Simply put, it is a stretch to draw the opposite inference; one must work hard not to infer that 1208 Juanita SW is "the residence" where all these criminal acts occurred and where incriminating evidence can be found. Deference is due under the circumstances, and his decision to issue the warrant is supported by a substantial basis in the record.

(Punctuation omitted.) *Trujillo*, 266 P3d at 7. For these reasons, the trial court did not err by denying Taylor's motion to suppress on this ground.

(b) We find no merit in Taylor's contention that the application and affidavit failed to establish probable cause that evidence of the offenses of child molestation and sexual battery would be found on the computers, cameras, and electronic storage devices listed in the warrant. Taylor asserts that there is no information in the affidavit connecting his computer "in any way to the alleged conduct" and that the detective misrepresented in her affidavit that one of the victims described Taylor as having a digital camera.

"[A]n affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause." (Citation, punctuation and footnote omitted.) *Jarrett v. State*, 299 Ga. App. 525, 533 (7) (c) (683 SE2d 116) (2009). Here, the detective stated under oath in "Attachment A" that a victim stated, in reference to photographs taken by Taylor while boys were undressing: "Mr. Taylor showed him one of the pictures on the screen on the back of a black digital camera." In its order denying Taylor's motion to suppress, the trial court found:

> the evidence showed that Defendant took at least one photograph of the victim and showed said photograph to the victim. Such evidence demonstrates the Defendant's ability to record photographs. . . . The lack of an averment stating that child molesters generally use the computer in furtherance of their crime does not negate the connection and sufficiency here.

(Citations omitted.) As the State eloquently argues in its brief, there is no evidence that the detective's affidavit contained deliberate falsehoods or was made with a reckless disregard for the truth:

> While the detective stated that [the victim] never said the words "digital camera," she also testified during cross-examination, that [the victim]

said he was able to see his picture on the back of the camera. So, despite the testimony of the detective that [the victim] said it was an "old-timey" camera, the fact that he could see his picture immediately on the back of the camera would reasonably lead the detective to know that Appellant was using a Digital SLR camera that has the appearance of an old 35 millimeter camera, but is, in fact, digital with a viewing window on the back of the camera from which a person may view a photograph just taken.

And it is a minor, common-sense inference to conclude that a person taking nude photographs using electronic devices that are meant to be connected to a computer would also store the photographs on a computer. Based upon this reasonable inference drawn from the facts before the magistrate, we find no merit in Taylor's claim that there was no probable cause to search his computers. See *Marlow v. State*, 288 Ga. 769, 770 (2) (707 SE2d 95) (2011) ("An officer's inference that items sought will be at the place to be searched requires no more than 'a fair presumption to be reasonable.' [Cit.]")

*Judgment affirmed. Barnes, P. J., and Rickman, J., concur.*